KNOEDLER et al. v. GLAENZER et al.

(Circuit Court of Appeals, Second Circuit. May 5, 1893.)

1. RIGHT TO FIRM NAME—INJUNCTION—EVIDENCE.
The firm of Goupil & Co., Paris and New York, sold to complainant M. K. the New York stock, good will, etc., together with the right to designate his business as "Formerly Goupil & Co. M. K., Successor;" agreeing to supply M. K. with a stock of prints and paintings for six years as agent, but refusing to allow him to use the name Goupil or Goupil & Co., without words to indicate succession, allowing him, however, to state that he was sole agent for Goupil & Co. in America. In 1867 the Paris firm, which, by legal succession had become "Goupil & Co., of Paris. B., V. & Co., Successors," established a branch of their business in New York under that name. Held, that they were entitled so to do in the absence of any express contract to the contrary. 47 Fed. Rep. 465, affirmed.

2. SAME—GOOD WILL.
There being no evidence of any attempt on the part of defendants B., V. & Co. to injure or impair the good feeling of the customers of complainant M. K., or deprive him of the advantages of the good will of the American business purchased by him, he was not entitled to an injunction against defendants.

3. SAME—CONSTRUCTION OF CONTRACT.
The sale of the good will of Goupil & Co. in New York to M. K. did not include the good will or rights of Goupil & Co., of Paris, including the rights of succession, and the right of the successor to do business wherever they saw fit, provided that they did not represent their business as

the business of complainant, and therefore M. K. was not entitled to an injunction on the ground that defendants attached to their name the words "of Paris."

**4. SAME—COMPLAINANT MUST DO EQUITY—WAIVER.**
    Complainant, having illegally and wrongfully represented himself as Goupil & Co. by advertisements, letter heads, flags, and other devices, and not as "K., Successor to Goupil & Co.," was not entitled to relief, and the fact that Goupil & Co., of Paris, being foreigners, made no objection thereto, was no waiver of objection to such misuse.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Bill by Michael Knoedler and others against Eugene W. Glaenzer, impleaded with other defendants. The bill was dismissed below, (47 Fed. Rep. 465,) and complainants appeal. Affirmed.

F. R. Coudert, for appellants.
Eugene H. Lewis, for appellee.

Before SHIPMAN, Circuit Judge, and TOWNSEND, District Judge.

TOWNSEND, District Judge. For some years prior to 1857, Adolph Goupil and Leon Boussod had carried on a general business as dealers in works of art and artists' materials in Paris and New York under the firm name of Goupil & Co. On March 26, 1857, they sold to Michael Knoedler, the manager of their New York house. the business of said house, including the furniture, fixtures, supplies, lease of premises, and the good will attached thereto, including the right to designate the business house as "Formerly Goupil & Co. M. Knoedler, Successor." Goupil & Co. reserved to themselves certain debts, money, and securities, and the ownership of certain prints and paintings. They agreed that until December 31, 1862, they would continue to consign to Knoedler a complete assortment of such of their prints and pictures as should be suitable for the American trade. The firm of Goupil & Co. continued to do business in Paris under said name until 1884, when, Albert Goupil having died, and Adolph Goupil having become a special partner, the remaining partners, Leon Boussod and Rene Valadon, succeeded to the business, and acquired the right to the use of the name "Goupil & Co. Boussod, Valadon & Co., Successors," and said business has ever since been conducted under said name. In 1886 said firm purchased all the interest of the Goupils in said business. In the spring of 1887, they established, and still maintain, a branch of their business, at No. 303 Fifth avenue, New York, under the name "Goupil & Co., of Paris., Boussod, Valadon & Co., Successors."

Said Michael Knoedler and his sons have, up to the present time, continued to carry on, in New York, the business bought in 1857. They have not only used the name "Goupil & Co. M. Knoedler, Successor," but have adopted a seal for the use of the firm, consisting of a peculiar device, with the words, "Goupil's Fifth Avenue & Twenty-Second Street," thereon. They have also placed

upon all articles of merchandise sold by them a label containing no words other than "Goupil's Fifth Avenue & Twenty-Second Street," irrespective of the question whether they were manufactured or produced by or purchased from Goupil & Co. or not. Furthermore, by large signs, and a flag exhibited at their place of business, by letter heads, by advertisements in the directory, and otherwise, they have held themselves out to the public as Goupil's, or the establishment of Goupil & Co., in such a way as to produce the impression that their place of business was that of the old house of Goupil & Co., not of Knoedler, Successor to Goupil & Co. These complainants now seek to enjoin the defendants from directly or indirectly making use of the name Goupil & Co., or the name Goupil, or words indicating succession thereto, in New York or elsewhere in the United States. The grounds on which this injunction is prayed for are that the aforesaid acts of defendants in establishing a branch house in New York were "for the purpose and with the intent and result of diverting unto themselves the valuable patronage and custom enjoyed by the complainants in their business."

The decision of the questions at issue between the parties depends upon the construction of the contract between Goupil & Co. and Knoedler in 1857. Counsel for complainants claim that thereby Goupil & Co. severed their business into a European part and an American part, and for a valuable consideration transferred the American part to Knoedler, and that, therefore, no other firm could be their successor in this country, except through Knoedler. Defendants claim that there is nothing in the contract of sale which expressly or impliedly suggests that the right to the use of the name Goupil & Co. was to be either perpetual or exclusive. The question, then, is whether Goupil & Co., by said contract, agreed that neither they nor their successors would thereafter do business in New York under the name Goupil & Co., or under the name of the vendee as their successor, or, in other words, what restriction, if any, was imposed upon Goupil & Co. by the terms of the sale to Knoedler. The counsel for complainants admits that, if the defendants were the successors in New York of a firm of Goupil & Co., which, down to the transfer to such successors, had been doing business in New York as Goupil & Co., there would be no ground for complaint. Goupil & Co., by said contract, sold to Knoedler the business and good will of their New York house, together with certain furniture, fixtures, and supplies. This sale carried with it the right to the use of the title "Goupil & Co. M. Knoedler, Successor," irrespective of the express provisions of the contract to that effect. Goupil & Co. further agreed to establish and maintain, with Knoedler, as their agent, during six years, a deposit of certain classes of prints and paintings, provided he should make sales amounting to 100,000 francs per year, of their prints. They reserved the right, in case he failed to reach this amount, to withdraw their deposit of prints and paintings from his hands. So much appears from the contract itself.

It further appears from the contemporaneous correspondence

that Goupil wrote Knoedler, refusing to allow him to retain the name Goupil, or Goupil & Co., or to use it without words indicating his succession, but authorized him to state to the public that he was the only agent for the publications of Goupil & Co. in America. There is no express or implied covenant in the contract that Goupil & Co. will not again go into business in New York. Assuming the contract to be uncertain, there is nothing in the correspondence between, or conduct of, the parties to indicate that they understood that such restriction, or any restriction, upon the future sale of the Paris business was implied in the New York sale. For aught that appears in the contract, Goupil & Co., or their vendees, could thereafter do business in New York, or, at the end of six years, or earlier, on breach of the contract, could transfer the exclusive agency for their prints and paintings to another agent.

In the absence of an express covenant, or of fraud, there is nothing to prevent the vendor of a business and good will from establishing a like business in the same place, under his own name, provided he does nothing to injure the good disposition of the public towards the old place of business, or impair any of the advantages which the purchaser has properly acquired by the purchase of the good will of the old customers. Churton v. Douglas, 1 Johns. Eng. Ch. 174, 28 Law J. Ch. 841; Hogg v. Kirby, 8 Ves. 215; Cruttwell v. Lye, 17 Ves. 335; Hall's Appeal, 60 Pa. St. 458; Leggott v. Barrett, 15 Ch. Div. 308; Cottrell v. Manufacturing Co., 54 Conn. 122, 6 Atl. Rep. 791; Wm. Rogers Manuf'g Co. v. Rogers, 58 Conn. 356, 20 Atl. Rep. 467; Massam v. Food Co., 14 Ch. Div. 748; Gilman v. Hunnewell, 122 Mass. 139; Carmichel v. Latimer, 11 R. I. 395; Browne, Trade-Marks, § 420. There is, in this case, no evidence of an attempt on the part of Boussod, Valadon & Co. to injure or impair the good feeling of the customers of Knoedler & Co. towards them, or to take away the advantages which they derived 30 years ago from the purchase of the good will of the business of Goupil & Co. in New York, except the fact that the defendants call themselves successors of the Paris firm; but it is said that, as Goupil & Co. had parted with their right, so far as New York is concerned, their successors cannot enjoy it. If Goupil & Co., without attempting to interfere with the good will which belonged to Knoedler, could rightfully have opened a shop in New York for the sale of prints and engravings, the argument that the Paris firm, which, 30 years after the Koedler purchase, was the owner of a name which expresses its legal status in France, could not come to New York and simply announce themselves by their French name, is technical, rather than convincing.

The defendants attach to their name the words "of Paris." Complainants strenuously urge that Goupil & Co., of Paris, was the very firm which sold its American business to Knoedler. The answer to this claim is that Goupil & Co. sold to Knoedler the branch house of Goupil, in New York, in 1857, and the good will attached thereto, but that it did not thereby sell the good will or rights attached to the house of Goupil & Co. of Paris, including the rights of succession, and the right of such successors to do business

wherever they saw fit, provided they did not represent their business as the business of the complainants.

But complainants contend that defendants have been guilty of disloyal competition, or unfair trade, and that this question was not considered or passed upon by the court below. The learned judge, in his opinion, accurately stated what constitutes unfair competition. He said:

"The good will of a business comprises those advantages which may inure to the purchaser from holding himself out to the public as succeeding to an enterprise which had been identified in the past with the name and repute of his predecessor. Any conduct on the part of a vendor of a good will, calculated to impair the value of these advantages, is a breach of promise, implied in sales of every description, that the vendor will not disturb the vendee in the enjoyment of his purchase."

It does not appear that the defendants or their vendors have done anything which would tend to disturb the complainant in the enjoyment of the good will purchased by him in 1857.

In Goodyear's India Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., 128 U. S. 604, 9 Sup. Ct. Rep. 166, Mr. Justice Field says:

"The case at bar cannot be sustained as one to restrain unfair trade. Relief, in such cases, is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff."

Counsel for complainants has cited a number of cases in support of the rule that a person may be enjoined against an unfair or dishonest use of his own name. The law is well settled, as stated by Mr. Justice Brown in Chemical Co. v. Meyer, 139 U. S. 542, 11 Sup. Ct. Rep. 625, that "cases are not wanting of injunctions issued to restrain the use even of one's own name when a fraud is manifestly intended, or when he has assigned or parted with his right to use it." But an examination of the cases indicates that they do not apply to a case like the present one. They show that the use of one's own name has never been enjoined except where it has been accompanied by fraudulent misrepresentations, or imitation of trade-marks or labels, or where the person has, by some express contract, parted with the right to the use of such name; and that, in the absence of such express contract, no abandonment of such right will be presumed. In Meneely v. Meneely, 62 N. Y. 427, the referee found that the use of the name Meneely by the defendants was calculated to mislead, and did mislead, the public into the belief that they were the proprietors of the Meneely bell foundry, carried on by the plaintiffs, and that the defendants expected and intended to derive a profit and advantage by reason of the good reputation and celebrity of the plaintiffs' foundry. But the injunction against the use of the word Meneely was denied, the court saying that "every man has the absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead." The use of one's

own name by a vendee fraudulently or in violation of an express contract not to do so is what the law characterizes as unfair or disloyal competition. But, in the absence of such elements, the party using his own name is only exercising his legal rights. Qui jure suo utitur nullum damnum facit, and, if damage does result therefrom, it is damnum absque injuria.

The defendants sharply criticise Knoedler's use, in advertisements and representations in various ways, that his store is Goupil & Co.'s, as conduct which a court of equity should regard as improper, while the complainants seek to show that their conduct was authorized, or at least assented to, by Goupil & Co., and from this assent derive an argument in support of the breadth of their claim to the use of Goupil & Co. But, if Knoedler & Co. had confined themselves to the authorized use of the words Goupil & Co., holding their firm out merely as its successors, during the past 30 years, there would have been no occasion for this suit. The reputation of the successors would gradually have become substituted for that of the predecessors; the transfer of the good will, or "probability that the old customers will resort to the old place," would have been complete; and the new body of customers would have had no interest, except in the new firm. It is because the public have been misled, by Knoedler's announcement that his house is the "Maison Goupil," by the statement signed "Goupil & Co.," that "the central house at Paris has branches at London, Berlin, Vienna, and La Haye, with which the New York branch is in constant connection," and by other unlawful appropriations of said name, that the name "Goupil" has become a valuable element in their business. What the complainants now seek to secure is not the probability that the old customers of 1857 will resort to the old place, but the probability that the new customers of 1889 will resort to the establishment of Knoedler in the belief that they are thereby dealing with Goupil & Co. They are not claiming merely the rights under the contract of 1857, the full benefit of which they have presumably enjoyed during the past 30 years, but they are also trying to deprive these defendants of the constantly increasing reputation which the defendants have acquired since said sale in connection with the Messrs. Goupil, and under the name of Goupil & Co.

It is claimed that by the failure of Goupil & Co. of Paris to object to the continued unlawful use by Knoedler of the name Goupil & Co. they have waived the right to now found any claim upon such misuse thereof; but, in order to constitute a waiver, there must be an intentional relinquishment of a known right. When there is no occasion for its exercise, such intention will not readily be presumed. Especially is this so when, as in this case, the party whose rights were invaded was in a foreign jurisdiction, and was not apparently aware of the extent of the use of the name. To sanction the breadth of the complainant's claim would be to enable the infringer to found a right upon his own wrong. Here the complainants have unlawfully misrepresented themselves as Goupil & Co. If they might have been originally enjoined against such misrepresentation, I see no reason why the fact that they have per-

sisted therein should affect the rights of Goupil & Co., or their successors, whenever they should see fit to exercise those rights. There can be no estoppel, or even waiver, by silence, except under circumstances where it becomes the duty of the party to speak.

The decree of the circuit court is affirmed, with costs.