OWENS v CITY OF DETROIT

Docket No. 88944. Submitted January 15, 1987, at Detroit. Decided February 19, 1987.

Steven A. Owens brought a tort action in the Wayne Circuit Court against the City of Detroit and Robert C. Williams, Jr., seeking damages for noneconomic loss under the no-fault automobile insurance act. Plaintiff was injured in the area of an eye, requiring fifty stitches in the area. He was left with a visible two-inch scar, internal scarring, and the eye continues to droop and water. Plaintiff's four front teeth were also broken and were extracted over one year after the accident and replaced with a partial plate. Plaintiff continues to have trouble talking and eating. Defendants brought a motion for summary disposition alleging that plaintiff's injuries amounted to neither a serious impairment of a body function nor a permanent serious disfigurement and, therefore, recovery was precluded under the no-fault act. The trial court, William L. Cahalan, J., found as a matter of law that plaintiff's injuries did not constitute a serious impairment of a body function, but also found as a matter of law that the loss of teeth did constitute a permanent serious disfigurement. Defendants appeal by leave granted.

The Court of Appeals *held:*

The meaning of serious impairment must be viewed in light of the effect of the injury on the plaintiff's body functions, rather than the effect of the injury on plaintiff's life or lifestyle. Three relevant factors help to evaluate the seriousness of the impairment of body function: (1) the extent of the impairment in quantitative, medical terms; (2) the duration of the impairment; and (3) the type of treatment required to rectify the impairment. The question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence, viewed in a light most

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 *et seq.*

What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

favorable to the nonmoving party, is such that reasonable minds could differ. Viewing the evidence most favorably toward the plaintiff, reasonable minds could differ as to the seriousness of the impairment of plaintiff's teeth and eye. Reasonable minds could also differ as to whether the injury to plaintiff's teeth constitutes permanent, serious disfigurement.

Reversed and remanded.

1. INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A serious impairment of body function under the no-fault act is to be viewed in light of the effect of the injury on the plaintiff's body functions, rather than its effect on plaintiff's life or lifestyle (MCL 500.3135[1]; MSA 24.13135[1]).

2. INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION.

Relevant factors for evaluating the seriousness of an impairment of body function under the no-fault act are: (1) the extent of the impairment in quantitative, medical terms; (2) the duration of the impairment; and (3) the type of treatment required to rectify the impairment (MCL 500.3135[1]; MSA 24.13135[1]).

3. INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION — PERMANENT SERIOUS DISFIGUREMENT.

The question whether the plaintiff suffered a serious impairment of body function or permanent serious disfigurement under the no-fault act must be submitted to the trier of fact whenever the evidence, viewed in a light most favorable to the nonmoving party, is such that reasonable minds could differ (MCL 500.3135[1]; MSA 24.13135[1]).

4. INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION — PERMANENT SERIOUS DISFIGUREMENT.

A serious impairment of a body function or a permanent serious disfigurement need not be considered to be commensurate with death or catastrophic injury where a plaintiff seeks noneconomic damages under the no-fault act (MCL 500.3135[1]; MSA 24.13135[1]).

*Philip M. Sallen,* for plaintiff.

*Brenda M. Miller,* Assistant Corporation Counsel, for defendants.

Before: R. M. MAHER, P.J., and SHEPHERD and
G. S ALLEN,* JJ.

PER CURIAM. Defendants appeal by leave
granted from the November 1, 1985, order of
summary disposition entered by the Wayne Circuit
Court in favor of the plaintiff on his tort claim for
noneconomic loss under Michigan's no-fault auto-
mobile insurance act, MCL 500.3135; MSA
24.13135.

For the purpose of the motion for summary
disposition, neither the negligence of the defen-
dants nor the extent of plaintiff's injuries was
disputed by the parties. Plaintiff's injuries were
incurred as he exited from a bus owned by the
defendant city and operated by defendant Wil-
liams. At the moment he exited, defendant was
struck by a bicycle operated by a third defendant
whose liability has been settled. In the course of
the collision, plaintiff's and the cyclist's heads
collided. Plaintiff was thrown to the pavement,
resulting in injuries to an eye and his teeth.

According to the parties' stipulation, plaintiff
received approximately fifty stitches in the area of
his eye immediately after the collision. After heal-
ing, plaintiff was left with a visible two-inch scar
in the area of one eye. Because of additional,
internal scarring, the eye continues to droop and
water some five years after the accident.

The parties also stipulated that plaintiff's four
front teeth were broken in the collision and ulti-
mately had to be removed. Plaintiff was subse-
quently fitted with a partial plate, but continues to
have trouble talking and eating.

Defendants' motion was filed under § 3135(1) of
the no-fault act, which provides:

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

> A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. [MCL 500.3135(1); MSA 24.13135(1).]

Defendants alleged that plaintiff's injuries amounted to neither a "serious impairment of body function" nor a "permanent serious disfigurement" and that plaintiff's claim for noneconomic damages was therefore precluded under the act. In accordance with *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), the trial court found as a matter of law that plaintiff's injuries did not constitute a serious impairment of body function, but also found as a matter of law that the loss of teeth did constitute a permanent serious disfigurement. We will consider each of these issues separately.

I

### SERIOUS IMPAIRMENT OF BODY FUNCTION

In *Cassidy v McGovern, supra,* our Supreme Court set forth a three-part standard for determining whether injuries meet the no-fault threshold of a serious impairment of body function as required by § 3135 of the act: (1) the injury must be objectively manifested; (2) an important body function must be impaired by the injury; and (3) the impairment of the body function must be serious. *Cassidy, supra; Kosack v Moore,* 144 Mich App 485, 488; 375 NW2d 742 (1985). Since the trial court's decision, our Supreme Court has reviewed and repudiated *Cassidy. DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). Under *DiFranco,* the first two *Cassidy* requirements, objective manifestation and important body function, have been

eliminated. *DiFranco* also liberalizes the third *Cassidy* requirement of "seriousness." While a "serious" impairment under *Cassidy* was to be commensurate with death or permanent serious disfigurement, *Kosack, supra* at 488-489, *DiFranco* expressly rejected any notion that a serious impairment must be catastrophic.

The *DiFranco* Court instead explained that the meaning of serious impairment must be viewed in light of the effect of the injury on the plaintiff's body functions, rather than the effect of the injury on plaintiff's life or lifestyle. *DiFranco, supra* at 68-69. Three relevant factors were suggested for evaluating the seriousness of the impairment of body function: (1) the extent of the impairment in quantitative, medical terms; (2) the duration of the impairment; and (3) the type of treatment required to rectify the impairment. *DiFranco, supra* at 67-68. Under *DiFranco*, the question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence, viewed in a light most favorable to the nonmoving party, is such that reasonable minds could differ. *DiFranco, supra* at 69.

We believe that the trial court, in finding no serious impairment of body function, ruled correctly under *Cassidy*. However, the result is different under *DiFranco*. Since this appeal was currently pending at the time of *DiFranco's* release, we are required to apply the new standard rather than that of *Cassidy. DiFranco, supra* at 75.

Turning first to the injury to plaintiff's teeth, we observe that there was no stipulation as to the extent of the impairment in quantitative, medical terms. However, the impairment was of an extensive duration in that the broken teeth were not extracted for over a year and plaintiff has continu-

ing problems with eating and speaking. Moreover, the treatment apparently involved surgical removal of the teeth and replacement with a prosthesis. Thus, we hold that reasonable minds could differ as to the seriousness of the impairment under *DiFranco*, viewing the evidence most favorably toward the plaintiff.

Applying the same *DiFranco* standard to plaintiff's eye injury, we would also reverse the trial court. Again, there is no evidence as to the extent of the impairment in quantitative, medical terms. However, plaintiff has continuing symptoms, including a drooping of the eyelid and watering of his eye. Furthermore, treatment required fifty stitches in the area of the eye and, in view of the continuing symptoms, more extensive treatment may be required. We again hold that, viewing the evidence most favorably toward the plaintiff, reasonable minds could differ as to whether the impairment was serious.

We must therefore reverse the trial court's ruling as to the seriousness of the impairment and remand for further proceedings consistent with this opinion.

## II

### PERMANENT, SERIOUS DISFIGUREMENT

As an alternative basis for his claim for noneconomic damages under the no-fault act, MCL 500.3135; MSA 24.13135, plaintiff alleged that his injuries constitute a permanent serious disfigurement. While *DiFranco* does not directly address this alternative threshold, we believe that its comments on the term "serious" are generally applicable to cases involving disfigurement. Thus, we again note that the term must not be considered

commensurate with death or catastrophic injury. *DiFranco, supra* at 59-60.

Defendants primarily cite two cases in support of their contention that the loss of four front teeth is not permanent, serious disfigurement: *Jakubiec v Kumbier,* 134 Mich App 773; 351 NW2d 865 (1984), and *Shortridge v Bailey,* 145 Mich App 547; 378 NW2d 544 (1985). However, *Jakubiec* involved only a question of serious impairment of body function, not disfigurement. *Shortridge,* on the other hand, did allege disfigurement, but the teeth were restored through a combination of root canal surgery and the use of etch material. The *Shortridge* Court therefore had no difficulty in finding that there was no permanent disfigurement. We believe that the loss of four front teeth, repaired only with the use of a removable plate, is clearly distinguishable from the injuries in *Shortridge* or *Jakubiec.*

More to the point is *McAdoo v United States,* 607 F Supp 788 (ED Mich, 1984). In *McAdoo,* the federal district court ruled that the loss of teeth, replaced only by a partial plate, would not result in permanent serious disfigurement as the term is used in the Michigan no-fault automobile insurance act. MCL 500.3135; MSA 24.13135. However, the *McAdoo* ruling was merely obiter dictum, since the claim was not preserved in plaintiff's complaint or in the final pretrial order, but was only raised by plaintiff in oral arguments. In any case, we would decline to follow the *McAdoo* reasoning, since it does not take into account any factors other than superficial cosmetics.

Here, as plaintiff explained in the trial court, the plate fits poorly and will fall out if he keeps talking. He also has difficulty eating with the plate. We believe that plaintiff's appearance while speaking or eating is more significant than his

appearance as he momentarily bares his teeth for the trial court's perusal. Furthermore, it seems plain that the plate must be removed for cleaning and quite possibly for vigorous activity. Obviously, the replacement of plaintiff's front teeth with a plate is not a catastrophic blow to his appearance. The trial court noted that plaintiff, at least at the time of the hearing, was a "pretty good looking fellow." However, considering the full spectrum of plaintiff's life, we believe that reasonable minds could differ as to whether plaintiff's injury constitutes permanent, serious disfigurement.

However, we do not affirm the trial court's order of summary disposition for the plaintiff under this theory. The trial court's ruling implies that the issue of permanent serious disfigurement may not be submitted to the jury, since under *Cassidy* the question was one of law. However, under *DiFranco*, "serious" is a jury question except in the most extreme cases. We do not believe that this disfigurement falls into the extreme at which reasonable minds could not differ. Thus, applying *DiFranco* by analogy, we reverse the trial court's ruling on this theory insofar as it grants summary judgment to plaintiff.

### III

#### REMEDY

We have applied the only facts at our disposal to the legal standard newly articulated by our Supreme Court. While we have concluded that defendants' motions should properly have been denied under this standard, it also appears from the record that defendants' stipulations were only for the purpose of a summary disposition motion under *Cassidy*. We therefore remand to the trial court for further proceedings, but do not preclude

defendants from bringing their summary disposition motion anew, based either upon newly stipulated facts or the actual facts of record as presented in depositions, affidavits or other methods acceptable under applicable court rules.

Reversed and remanded. We do not retain jurisdiction.