*In re* MARRIAGE OF LESLIE KAPUSTA, Petitioner-Appellee, and GEORGE R. KAPUSTA, Respondent-Appellant.

First District (1st Division)   No. 84—2888

Opinion filed March 10, 1986.

Baer, Davis, Zavett, Kane & MacRae, of Chicago (John Sills Jones, of counsel), for appellant.

Letvin & Stein, of Chicago (David J. Letvin, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Respondent, George Kapusta, appeals from the valuation and distribution of marital property incident to the trial court's judgment dissolving his marriage with petitioner, Leslie Kapusta. Specifically he contests: (1) the valuation of his medical practice; (2) the valuation of his pension; (3) the trial court's denial of his motion to re-open the proofs; and (4) the court's order directing him to pay a portion of Leslie's attorney fees. We reverse in part, affirm in part and remand.

George and Leslie Kapusta were married on August 12, 1977. Their childless marriage lasted six years. Leslie filed a petition for

dissolution of marriage on August 23, 1982. At the time the petition was filed, Leslie was 30 years old. She had a master's degree in nursing and had been employed as a nurse throughout the marriage. She had also worked part-time in her husband's medical practice.

George Kapusta is a surgeon specializing in traumatology. When he married Leslie, he was completing his medical residency in Maryland. In 1980, the Kapustas moved to Illinois. George began a surgical practice that was based solely at Christ Community Hospital in Oak Lawn, Illinois. Because apparently, hospital personnel referred patients to him for only one surgical procedure of short duration, he had few repeat patients. He stated that he regularly worked from 50 to 70 hours a week and was "on call" around the clock.

George's practice was organized as a solely owned professional corporation. For the year ending in 1981, his corporation had gross revenues of $158,835, out of which he paid himself a salary of $100,000 and made a contribution to his pension in the amount of $25,000. In his second year his corporation grossed $270,813; his salary was $170,000, his pension contribution, $42,000. For the year ending in 1983, the gross receipts were $317,171, his salary $200,000, and his pension contribution $45,470.

At trial, the parties contested the valuation and division of the marital property. George's practice constituted the major asset in a marital estate totalling $846,633. Both parties presented expert testimony concerning the value of George's medical practice. George's expert witness, Arthur Smith, testified that the market value of George's practice was $10,000. However, he did not testify about any comparable sales. His value was divided between $9,600 for good will and $400 for the corporation's tangible assets (he evidently failed to include corporate bank accounts and a company car in his valuation).

Leslie's expert, James Tomes, testified that George's corporation was worth $553,000. To arrive at the value of the practice as a going concern, he used the weighted average of three valuation approaches: (a) a multiple of gross revenues; (b) a multiple of adjusted earnings; and (c) a capitalization of excess earnings. With the first two approaches, Mr. Tomes used multipliers of 1.5 because of the youth of the corporation and its prospects for success. Under the third approach, which was given twice the weight of the others, Mr. Tomes capitalized the practice's excess earnings at a rate of 20%.

The trial court essentially accepted the methodology used by Mr. Tomes, except that the court changed the multipliers from 1.5 to 1 and valued the practice at $375,000. The court also valued George's pension at $144,934, which was the amount of money in the pension

fund. The court then awarded 35% of the marital assets to Leslie and 65% to George. Leslie was given the marital home and George received all of the assets pertaining to his medical practice, including his pension. Leslie was provided with sufficient funds to compensate her for 35% of his pension fund. George was also ordered to pay $9,500 of Leslie's attorney fees.

George subsequently filed a motion for reconsideration and to reopen the proofs. By offer of proof, he presented the testimony of Mr. Krypel, a specialist in the valuation of professional practices. Mr. Krypel appraised George's corporation at $27,717 (the book value of the corporation's tangible assets) since he found the practice's good will was worth nothing. George also attempted to show that the gross receipts of his practice had declined by $65,000 for the first nine months of the fiscal year ending in 1984. The trial court denied George's motion, stating that even if the evidence offered in support of his motion had been admitted, it would not have changed his decision.

This court subsequently stayed judgment pending appeal on the condition that George post a quit-claim deed to the marital home and the stock of his medical corporation as security for an appeal bond. Leslie's motion to reconsider the order was taken with the case. We now deny that motion.

■ Leslie contends that George waived his right to appeal the valuation of his medical corporation. She asserts that he accepted the benefits of the trial court's valuation when he used it to justify posting the stock of his corporation as security for the appeal bond. Generally, litigants cannot attack a decree after enjoying its benefits if to do so would place the opposing party at a disadvantage upon reversal of the decision. (*In re Marriage of Reib* (1983), 114 Ill. App. 3d 993, 1003, 449 N.E.2d 919.) In the present case, we cannot conclude that Leslie was prejudiced in any material manner by the fact that George posted the stock as security for the appeal bond.

We turn now to George's assertion that the trial court considered "good will" in valuing his practice and, therefore, its valuation is improper under *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 347, 461 N.E.2d 447. As evidence that "good will" was included in the valuation, he points to testimony by Mr. Tomes that "good will" comes into play in each of the three methods of valuation used by the trial court. We find respondent's reliance on *Wilder* is misplaced.

Although good will defies precise definition (see Black's Law Dictionary 625 (5th ed. 1979)), reputation and the business advantages that result from it (such as referrals and established clientele) form

the core of most conceptions of good will. (*In re Marriage of Wisner* (Ariz. App. 1981), 129 Ariz. 333, 631 P.2d 115; *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1; *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N.W.2d 130; Comment, *Professional Goodwill in Louisiana: An Analysis of Its Classification, Valuation, and Partition*, 43 La. L. Rev. 119 n.3 (1982) (hereinafter cited as *Professional Goodwill in Louisiana*).) Traditionally, good will was held to exist only in commercial and trade enterprises, and not in professional businesses whose value was said to be totally dependent on the personal skill and talent of the practitioner. (See *Cook v. Lauten* (1954), 1 Ill. App. 2d 255, 117 N.E.2d 414; 2 J. McCahey, *Valuation & Distribution of Marital Property* sec. 22.05[S], at 22—84 (1984).) In recent years, the question of whether good will should be considered in valuing a professional corporation has confronted the courts with increasing frequency. The vast majority of courts have held that good will should be a factor to consider when appraising the value of a professional corporation. Annot., 52 A.L.R.3d 1344 (1973).

This question was first considered in Illinois in the case of *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421, *appeal denied* (1981), 85 Ill. 2d 582. The *White* court followed the majority view:

> "under the theory that despite the intangible quality of good will in a professional practice, it is of value to the practicing spouse both during and after the marriage and its value is manifested in the amount of business and, consequently, in the income which the spouse generates." (98 Ill. App. 3d 380, 384, 424 N.E.2d 421.)

The court in *White* rejected the view that the good will of a practice could not exist without the continued efforts and skills of individual practitioners because it failed to take into account the fact that the value of good will frequently remains after the death, resignation or disability of the person who generated it. *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 384, 424 N.E.2d 421.

The reasoning in *White* was rejected in the case of *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 347, 461 N.E.2d 447. The *Wilder* court viewed *White* as having defined "good will" as the earning potential of the professional spouse. (122 Ill. App. 3d 338, 348, 461 N.E.2d 447.) The *Wilder* court was concerned that valuing "good will" (*i.e.*, earning potential) during the valuation process would result in "double consideration" of the professional spouse's earning capacity since it must also be considered when the marital property is apportioned. (122 Ill. App. 3d 338, 347, 461 N.E.2d 447.) Because the

trial court had considered earning potential, the *Wilder* court held that the trial court had not erred in failing to set a fixed monetary value for good will in valuing the stock. 122 Ill. App. 3d 338, 348, 461 N.E.2d 447.

In essence, respondent contends that the trial court's valuation was contrary to *Wilder*. We do not agree. The trial court did not set a fixed monetary value for good will. Moreover, the trial court indicated that it made its valuation of George's medical corporation with regard for the *Wilder* court's admonition against giving double consideration to the professional spouse's earning potential. Therefore, we cannot say that the trial court's valuation of George's professional practice contravened *Wilder*.

Because good will was defined in *Wilder* as the earning potential of the professional spouse, the *Wilder* court did not decide whether good will should be considered in the valuation of a professional practice where it can be distinguished from earning capacity of the practitioner who generated it. Most courts from other jurisdictions have recognized that good will is distinguishable from earning capacity. (See *In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 109, 113 Cal. Rptr. 58, 68; *Dugan v. Dugan* (1983), 92 N.J. 423, 433, 457 A.2d 1, 6; *In re Marriage of Hall* (1984), 103 Wash. 2d 236, 241, 692 P.2d 175, 178.) In the context of this case, however, we need not and do not decide this issue, because we find that the trial court's valuation of George's medical corporation must be reversed and remanded on other grounds.

Illinois courts have recognized that the stock of closely held corporations and professional businesses must be valued with regard for the operation of the business. (*In re Marriage of Weiss* (1984), 129 Ill. App. 3d 166, 472 N.E.2d 128; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) In the case of *In re Marriage of Reib* (1983), 114 Ill. App. 3d 993, 449 N.E.2d 919, the court held that evidence of the income and assets of an insurance business as reflected in its corporate income tax return was insufficient to establish its value as a business entity.

Here, the trial court valued George's medical corporation by inserting financial information derived from corporate income tax returns into three methods of valuation: (a) a multiple of gross revenues approach; (b) a multiple of adjusted earnings approach; and (c) a capitalization of excess earnings approach. The trial court adjusted the multiplier used in the first two approaches in order to take into account the nature and operation of George's practice. The third approach was given special weight in the court's calculations, but was

not applied with regard for the particular practice involved.

Under the capitalization of excess earnings approach, the value of the practice as a business entity is determined by capitalizing "excess earnings," which are the amount by which the annual adjusted earnings (net corporate income plus George's salary and pension) exceed the hypothetical salary that would be earned as an employee by a professional with similar qualifications. See generally *Dugan v. Dugan* (1983), 92 N.J. 423, 439, 457 A.2d 1, 9; Comment, *Professional Goodwill in Louisiana*, 43 La. L. Rev. 119, 145-46.

In applying this method of valuation, the court used only financial data from the third and most successful year of George's practice. However, courts and commentators agree that it is best to make this calculation using the average annual earnings of the professional practice over a period of several years in order to reduce the impact of unusual financial successes or set-backs. *Bowen v. Bowen* (1984), 96 N.J. 36, 52 n.6, 473 A.2d 73, 81 n.6 (where corporation is relatively young, use of less than five years may be acceptable); *Nehorayoff v. Nehorayoff* (Sup. Ct. 1981), 108 Misc. 2d 311, 437 N.Y.S.2d 584; Rev. Rul. 68—609 1968—2, C.B. 327-28.

In addition, the trial court compared the adjusted earnings of George's practice to the average salary of general surgeons throughout the United States. There was no showing that surgeons in George's specialty with the same age, qualifications and experience in the Chicagoland area were receiving salaries approximately equivalent to the averages shown. See *Poore v. Poore* (1985), 75 N.C. App. 414, ___, 331 S.E.2d 266, 272, *review denied* (1985), 314 N.C. 543, 335 S.E.2d 316; *In re Marriage of Hall* (1984), 103 Wash. 2d 236, 245, 692 P.2d 175, 180.

■ Similarly, the trial court should have considered the effort that George expended on his surgical practice in determining the excess earnings of George's practice. (See *Dugan v. Dugan* (1983), 92 N.J. 423, 439, 457 A.2d 1, 9; L. Golden, *Equitable Distribution of Property* sec. 7.11, at 224 n.82 (1983).) Because George worked from 50 to 70 hours a week, he may have a significantly greater income than a hypothetical employee who regularly worked a 40-hour week; but that increased income may be due solely to longer hours and greater productivity. We find that the trial court's failure to take these factors into account resulted in an artificially inflated valuation of George's medical corporation and constituted an abuse of discretion. Accordingly, we reverse the trial court's valuation and remand the cause for a reconsideration of the value of George's practice consistent with the views expressed herein.

In view of our disposition of the case, we need not and do not consider whether the trial court should have re-opened the proofs. Moreover, the question of attorney fees must be remanded for reconsideration by the trial court in conjunction with any modification of the property division that may be deemed necessary by the reevaluation of the medical practice.

■ Regarding the trial court's valuation of George's pension, we do not agree with George's assertion that the trial court failed to take into account possible tax consequences. The court did not order the invasion of George's pension, and there was no showing that adverse tax consequences will necessarily be precipitated by the court's division of property. We find that the trial court did not abuse its discretion in refusing to reduce the value of his pension by a speculative future tax liability. See *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 167, 427 N.E.2d 125; *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 913, 466 N.E.2d 925, *appeal denied* (1984), 101 Ill. 2d 578.

■ Moreover, we find no merit in George's argument that two corporate bank accounts were counted twice when the court valued the pension at $144,934 and then valued the corporate bank accounts as separate marital assets. No objection was made when the trial court valued the pension and these accounts separately. Although respondent stated during his post-trial motion to re-open the proofs that the pension included these accounts, his statements were unsubstantiated. We cannot say that the trial court abused its discretion in its valuation of the pension.

In summary, we reverse the trial court's valuation of the stock of respondent's medical corporation and remand for reconsideration consistent with the principles expressed herein. We also remand the question of attorney fees. The trial court's valuation of respondent's pension is affirmed.

Reversed in part, affirmed in part and remanded.

BUCKLEY, P.J., and QUINLAN, J., concur.