*In re* MARRIAGE OF MARIE R. COURTRIGHT, Petitioner-Appellant, and JOHN B. COURTRIGHT, Respondent-Appellee.

Third District   No. 3—86—0327

Opinion filed April 28, 1987.

Susan Tungate, of Tungate & Tungate, of Watseka, for appellant.

Gill M. Garman, of Sebat, Swanson, Banks, Lessen & Garman, of Danville, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This is an action to dissolve the marriage of Marie and John Courtright. The plaintiff, Marie, appeals from that portion of the judgment of the circuit court of Iroquois County pertaining to the distribution of marital property, the award of permanent maintenance, and the denial of her request for attorney fees.

The evidence introduced at trial established that the parties were married in 1956 and invested 29 years in the marriage prior to its termination. Four children were born, all adults at the time of the dissolution. The defendant, John, is a licensed physician and practices in a

three-man clinic as a general practitioner. He is in his late fifties. John's adjusted gross income for the four years prior to the dissolution ranged from $83,000 to $100,000. Marie is in her mid-fifties, has a degree in education from Northwestern University, but is not presently licensed to teach. She has not worked outside the home since 1958 but has obtained seasonal employment as a switchboard operator at a Colorado resort at $5.75 an hour. She is in general good health except for some residual disability in her left foot as a result of childhood polio. At the time of the dissolution she had also shown some discomfort in her right foot from an arthritic condition. Her health prevents her from working at jobs which require her to be on her feet for any length of time.

The trial court found that the value of all marital assets was agreed upon except for the value of John's medical practice. The court awarded certain IRA accounts, household goods, the family's 200-acre farm free and clear of all liens, and the marital home to Marie. The home, valued at $135,000, was subject to a $22,000 mortgage. The court awarded John certain assets which include two items in dispute on this appeal. Marie claims that improper valuations were attached to John's pension fund and accounts receivable for his medical practice, which in turn adversely affected the property distribution. While the defendant has a significant income generated from his medical practice, he also incurred substantial obligations via the property distribution, including significant litigation costs, payable almost solely from that income.

The trial court did not award permanent maintenance on the basis that property allocated to Marie, together with her potential earning abilities, would provide her with sufficient income. It did, however, award rehabilitative maintenance in the amount of $1,100 per month in order to help Marie adjust to her new status and provide time to seek suitable employment and improve her skills, if necessary. The court retained jurisdiction to review the issue of further extension of the award at the end of two years although the court believed that this award , together with investment and rental income, should permit Marie to become and remain financially independent in the future.

The trial court also denied Marie's request for attorney fees. The court reasoned that John had already been assigned significant litigation costs as debts and noted that, although the fees were reasonable, insufficient evidence was presented to support them or to establish Marie's inability to pay them.

The first issue presented by the parties centers on the property distribution and certain valuations attached to the good will and ac-

counts receivable of John's medical practice and the value placed on John's pension fund. Marie contends that the failure of the court to consider the good will of the practice and improper valuations of the accounts receivable and John's pension fund produced an inequitable property distribution.

The Illinois courts have differed on whether the good will developed in a professional practice deserves separate consideration and specification as an asset of the practice or whether it is a factor already given consideration under the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*). In *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421, the court held that good will should be considered separately because "despite the intangible quality of good will in a professional practice, it is of value to the practicing spouse both during and after the marriage and its value is manifested in the amount of business and, consequently, in the income which the spouse generates." (98 Ill. App. 3d 380, 384, 424 N.E.2d 421, 424; see also *In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659.) The counterpoint to this argument was expressed in *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447, when the court held that this definition of good will is reflected in three of the factors which the trial court must consider in reaching a just property distribution under section 503(d) of the IMDMA. The *Wilder* court's conclusion was that the ability to generate income, which the petitioner argued is what good will reflects, was already considered by the legislature when the IMDMA was enacted. 122 Ill. App. 3d 338, 347, 461 N.E.2d 447, 453; see also *In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 491 N.E.2d 48 (first division of first district following fifth division decision in *Wilder*).

Although many businesses possess this intangible known as good will, the concept is unique in a professional business. The concept of professional good will is the sole asset of the professional. If good will is that aspect of a business which maintains the clientele, then the good will in a professional business is the skill, the expertise, and the reputation of the professional. It is these qualities which would keep patients returning to a doctor and which would make those patients refer others to him. The bottom line is that this is reflected in the doctor's income-generating ability.

In this case, the trial court received evidence of John's future projected income; income that has been based on the past performance in his practice and the likelihood that his skill, expertise, and reputation will permit him to continue in a similar fashion in the future. Section

503(d) of the IMDMA requires that the court examine certain factors in apportioning marital property. Those factors include:

"[T]he relevant economic circumstances of each spouse when the division of property is to become effective *** [,the] occupation, amount and sources of income, vocational skills [and] employability *** of each of the parties *** [,and] the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Ill. Rev. Stat. 1985, ch. 40, pars. 503(d)(4),(7), (10).)

The fact remains that the court has considered good will in its property allocation. It considered the evidence presented regarding John's continuing escalating future income propounded by Marie's expert as well as the factors which dictated against it. The court cited specifically the "ravages of advancing time and the significant changes occurring in the area of health care" which would force a reduction in certain aspects of the practice.

■ We have determined that the trial court sufficiently considered the aspect of good will in this case. The trial court valued the business at $45,000—$7,500 in fixed assets and $37,500 in receivables. Although good will was not considered in the court's valuation of the business itself, it was a factor in examining John's income potential. To figure good will in both facets of the practice would be to double count and reach an erroneous valuation.

Marie further contends that improper valuations of John's accounts receivable and pension fund contributed to the erroneous property distribution. She asserts that the valuation of the pension fund 4½ months prior to the dissolution and the valuation of the accounts receivable 11 months prior to dissolution were inaccurate. Marie contends that the trial court abused its discretion in using these values.

■ ■ It is undisputed that the trial court should value the marital property of the parties as of the date of the judgment of dissolution of marriage. (*In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659.) However, the court is not required to place a specific value on each item of property; rather, only competent evidence of the value supported by evidence of that valuation is required for a property division. Further, it is the obligation of the parties in a dissolution proceeding to present the court with sufficient evidence of the value of the property. (*In re Marriage of Deem* (1984), 123 Ill. App. 3d 1019, 463 N.E.2d 1317.) The court reached its determination on what evidence was presented and we hold that it was not error to use the valuations as of the dates submitted.

■ The projected return on the pension fund, computed by

Marie's expert, was 18.8%. Yet both experts agreed that this rate of return was unreasonable. The trial court was not bound to accept this valuation in the face of such testimony and had no other recourse than to accept the last known valuation which could be supported by competent evidence. The same reasoning applies to the accounts receivable portion of John's business. There was substantial dispute concerning this aspect of the case. John's bookkeeper showed a running balance of approximately $201,000 but an accounts receivable balance of only $130,000; a difference of $70,000. Testimony indicated that this difference was due to a 1984 write-off figure of some $58,000. This left John with a $37,500 share of the accounts receivable. Marie contends that she was effectively prevented from producing evidence of a contrary valuation without incurring the prohibitive expenses of investigating all accounts. Although this might have resulted in a substantial difference in valuation, absent some allegation and proof of bad faith in the use of "creative bookkeeping" to prevent Marie from obtaining a valid account of the business, we hold that the court did not abuse its discretion in accepting the latest valuation available.

■ In view of our conclusion that the property distribution was correct, the next issue we address is permanent maintenance. Marie contends that the court's award of rehabilitative maintenance in the sum of $1,100 per month, that award being reviewable at the end of two years, was an abuse of discretion. We disagree.

Section 504 of the IMDMA sets out the factors to be considered and the conditions which must exist prior to an award of maintenance. (Ill. Rev. Stat. 1985, ch.40, par. 504.) Maintenance may be ordered only if the spouse seeking maintenance:

"(1) lacks sufficient property *** to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment ***, or

(3) is otherwise without sufficient income." (Ill. Rev. Stat. 1985, ch. 40, par. 504(a).)

Additionally, the court must consider the following factors in determining the duration and amount of maintenance:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him ***;

(2) the time necessary to acquire sufficient education or training [for] employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and physical and emotional condition of both par-

ties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).) Although Marie has substantial assets which may be sold and invested, it will still be insufficient to provide for her reasonable needs. The trial court's order contemplates the sale of the marital home. Although this may generate some investment income, it may not be significant. Marie does own the 200-acre farm, but the income realized on that property must be balanced with the operating expenses. Additionally, Marie's age and physical condition, her chances of gaining appropriate employment, and the standard of living established during marriage require a larger maintenance award. Reasonable needs are determined by viewing the overall circumstances during the marriage. *In re Marriage of De Bat* (1984), 127 Ill. App. 3d 463, 468 N.E.2d 1348.

The vehicle employed by the trial court, *i.e.*, rehabilitative maintenance reviewable at the end of two years, was particularly appropriate in this case. The court recognized that the condition of both parties was fluid upon dissolution of the marriage. However, it provided for complete review at the end of two years and not merely a review on changed circumstances. The maintenance award was computed on the basis of substantial uncertainties, *e.g.*, future income, but the court will be able to compensate the parties at the end of the two-year period for any inequity by an increase or decrease in the maintenance award.

■■ ■ The final issue which we will resolve on this appeal concerns Marie's attorney fees. The court noted that although the fees seemed reasonable, there was insufficient evidence to either support the fees assessed or, more importantly, demonstrate Marie's ability to pay. The court also pointed to the fact that John had incurred substantial litigation costs as part of the property distribution. It must be remembered that attorney fees are the primary obligation of the party to whom services were rendered in a dissolution of marriage proceeding. (*In re Marriage of Bauer* (1985), 138 Ill. App. 3d 379, 485 N.E.2d 1318.) To justify the award of attorney fees in a dissolution case, the party seeking this relief must show financial inability to pay and the ability of the other party to do so. The award of attorney fees rests in the discretion of the trial court. (*Moore v. Moore* (1977), 53 Ill. App. 3d 228, 368 N.E.2d 545.) This ability or inability to pay must be judged by the relative position of the parties to each other and not by some objective standard. (See *Brandis v. Brandis* (1977), 51 Ill.

App. 3d 467, 367 N.E.2d 162.) We cannot say that the trial court's determination that Marie was able to pay her own attorney fees was an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Iroquois County is affirmed.

Affirmed.

BARRY, P.J., and SCOTT, J., concur.