582 A.2d 784

Margaret E. PRAHINSKI

v.

Leo PRAHINSKI.

No. 62, Sept. Term, 1988.

Court of Appeals of Maryland.

Dec. 6, 1990.

M. Albert Figinski (Arnold M. Weiner, Peter B. Rosenwald, II, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on brief), Arnold M. Weiner Baltimore, for petitioner.

Daniel F. Thomas (Thomas & Kalichman, on brief), Daniel F. Thomas, Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ. and CHARLES E. ORTH, Jr., Judge of the Court of Appeals, (retired) Specially Assigned, JJ.

Reargued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE, CHASANOW and CHARLES E. ORTH, Jr., Judge of the Court of Appeals, (retired), Specially Assigned, JJ.

COLE, Judge.

In this case we must determine whether the goodwill of a solo law practice is a value includable as marital property for purposes of calculating a monetary award upon divorce.

The facts are neither complicated nor in dispute. Margaret and Leo F. X. Prahinski were married on March 20, 1965. Margaret discontinued her education after her freshman year in college in order to maintain the family home. Leo continued his formal education and eventually obtained a law degree. In 1971, Leo started his own law practice. Margaret became his secretary, and as the law practice grew, so did Margaret's responsibilities in the office. Gradually, the focus of the practice shifted to real estate settlements and Margaret's position evolved into that of office manager.

Leo became involved with another woman in 1983. The parties separated thereafter, and Margaret filed for divorce on November 14, 1986. The Circuit Court for Prince George's County granted an absolute divorce, and on July 10, 1987, the court filed a written order determining what was marital property, providing for distribution of marital assets, and granting both a monetary award and indefinite alimony. Included in the monetary award was one-half of the value of the law practice.

Leo appealed to the Court of Special Appeals claiming that the trial court erred in considering his law practice to be marital property consisting totally of goodwill and dividing the value thereof equally between the parties. Leo also questioned the propriety of setting the amount of alimony at a time far in advance of when the alimony payments were to commence.

The Court of Special Appeals, 75 Md.App. 113, 540 A.2d 833 (1988), held that the value of the practice consisted entirely of the reputation of Leo F. X. Prahinski, Attorney-at-Law, and was therefore personal to him. As such, the value of the practice was not marital property and could not be subject to distribution as part of the monetary award. The intermediate appellate court left open the possibility that goodwill in a solo practice could be marital property if it could be shown that the goodwill was severable from the reputation of the practitioner. Additionally, the Court of Special Appeals held that it was improper for alimony to be set now when the payments were not to begin until some future time because it would be impossible to predict the economic circumstances of the parties on the date when alimony was to begin. Furthermore, that court held that alimony should take into consideration the monetary award. Since that award must be recalculated, that court declared the previous alimony calculation was invalid. The intermediate appellate court, therefore, remanded the case to the trial court for proper calculation of both the monetary award and alimony. Margaret petitioned this Court for certiorari which we granted in order to address the important issue involved.

We set forth several sections of the Maryland Code (1984, 1989 Cum.Supp.) Family Law Article which we believe impact upon our disposition of this case.

Section 8–201(e) provides:

(e) **Marital property.**—(1) "Marital Property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

Section 8–203 —**Marital Property.—Determination.** (a) **Time of court action.**—In a proceeding for an annulment or an absolute divorce, if there is a dispute as to whether certain property is marital property, the court shall determine which property is marital property:

(1) when the court grants an annulment or an absolute divorce[.]

Section 8–205 provides in pertinent part

(a) **Grant of award.**—Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from 1 party to either or both parties, grant a monetary award, or both, as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

(b) **Factors in determining amount and method of payment or terms of transfer.**—The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both, after considering each of the following factors:

(1) the contributions, monetary and nonmonetary, of each party to the wellbeing of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

(9) any award of alimony and any award or other provision that the court has made with respect to family use, personal property or the family home; and

(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

Under the above provisions, it seems to us that trial courts are required first to determine which property is marital, what the value of this marital property is, and then to apply the ten factors in § 8–205(b) to determine what monetary award represents an "adjustment of the equities and rights of the parties" in the marital property.

Margaret argues that the value of the practice should be considered marital property, and therefore subject to a monetary award to compensate her for her contributions thereto. She insists that the majority of the work handled by the practice did not require an attorney, and that she contributed the overwhelming majority of the time and effort which made the practice successful. To deny her an equitable share of the goodwill inherent in the practice, she claims, would frustrate the purpose of the monetary award statute, which seeks to adjust the rights of the parties based upon their contributions during the marriage.

Specifically, Margaret contends that goodwill is a form of property which the practice acquired during the marriage; hence it fits the definition of marital property, no matter whose name is on the business. She further urges this

Court to adopt the position that the professional goodwill of a sole proprietorship is valuable property to be included in the marital estate.

Leo maintains that his vocation has always been a solo law practice. As such, any intangible value assigned to the business is a result of his personal reputation as an attorney. The only way that goodwill could be considered marital property, he argues, is if the goodwill had a value independent of the continued presence or reputation of the sole practitioner. He contends that he is the only person who can practice under the name "Leo F.X. Prahinski, Attorney-at-law." He claims he could not sell his practice and its intangible assets to anyone; therefore, he concludes that the goodwill is personal to him and should not be considered marital property.

The characterization of goodwill and its relationship to a business is crucial to the determination of this issue. In *Hagan v. Dundore,* 187 Md. 430, 50 A.2d 570 (1946), we examined the sale of a partnership interest. In so doing, we took notice of the definitions of goodwill applied by other jurisdictions. One such definition states: "The goodwill of a business comprises those advantages which may inure to the *purchaser* from holding himself out to the public as succeeding to an enterprise which has been identified in the past with the name and repute of his *predecessor.*" *Id.* at 442, 50 A.2d at 576 (quoting *Knoedler v. Boussod,* 47 F. 465, 466 (S.D.N.Y. 1891), *aff'd,* 55 F. 895 (2d Cir.1893)) (emphasis added). According to this definition, goodwill can exist in those situations in which a business has successive owners, each one benefitting from the management of the business by the preceding owners.

Goodwill exists, however, in businesses that are still in the hands of their founders and which may never be sold. We took notice of such a situation in *Brown v. Benzinger,* 118 Md. 29, 84 A. 79 (1912), where we quoted Lord Eldon's definition of goodwill as "the probability that the old customers will resort to the old place." *Id.* at 35, 84 A. at 81 (quoting *Cruttwell v. Lye,* 34 Eng.Rep. 129, 134 (Ch. 1810)).

Such a definition provides for the presence of goodwill in a business even if no monetary value has ever been placed on it.

In *Brown,* the Court was confronted with the sale of a "business conducted by [the vendor] as surgeon chiropodist." 118 Md. at 31, 84 A. at 79. That opinion makes clear that as long ago as 1912, this Court considered the goodwill involved in a profession to be different from the goodwill involved in a commercial business. Examining the decisions from other jurisdictions, the *Brown* court noted that in the context of a non-competition agreement in the sale of a business, the goodwill of a professional practice had been held to be personal to the practitioner. The Court specifically observed that there was a distinction

between the sale of the good will of a trade or business of a commercial character where the location is an important feature of the business, and the sale of an established practice and good will of a person engaged in a profession or calling where the income therefrom is the immediate or direct result of his labor and skill and where integrity, skill, ability and other desirable personal qualities follow the person and not the place.

*Id.* at 36, 84 A. at 81 and cases cited therein.

Having recognized the existence of goodwill in the above noted situations, we must now determine whether goodwill can exist in the particular circumstances of the instant case. Although the trial court found that the business was predominantly a title company and treated it as such, both parties' arguments to this Court are based on the Court of Special Appeals' holding that the business was a sole proprietorship, and in particular a solo law practice. It should be noted that neither party is contesting the status of the license to practice law.[1] What is being contested is the

---

1. As we held in *Archer v. Archer,* 303 Md. 347, 493 A.2d 1074 (1985), "a professional degree or license does not possess any of the basic characteristics of property within the ambit of marital property." *Id.* at 357, 493 A.2d at 1079.

existence of goodwill in a practice established once the professional license has been obtained.

Because the question of whether professional goodwill is marital property is one of first impression in Maryland, we found it beneficial to review the decisions of the courts of other states which have addressed the issue. This review revealed three positions. The view most often followed treats goodwill as marital property in all cases.[2] The next largest group considers goodwill to be personal to the practitioner, and therefore not marital property.[3] Finally, a small group of states requires a case-by-case examination to determine how goodwill should be treated.[4] It is interesting

---

**2.** *Rostel v. Rostel,* 622 P.2d 429, 430–32 (Alaska 1981), *rev'd on other grounds,* 749 P.2d 343 (Alaska 1988); *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (1981); *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); *Golden v. Golden,* 270 Cal.App.2d 401, 75 Cal. Rptr. 735 (1969); *Mueller v. Mueller,* 144 Cal.App.2d 245, 301 P.2d 90 (1956); *In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979); *Wright v. Wright,* 469 A.2d 803 (Del.Fam.Ct.1983); *In re Marriage of Kapusta,* 141 Ill.App.3d 1010, 96 Ill.Dec. 234, 491 N.E.2d 48 (1986); *Porter v. Porter,* 526 N.E.2d 219 (Ind.App.1988); *Heller v. Heller,* 672 S.W.2d 945 (Ky.Ct.App.1984); *Rethman v. Rethman,* 429 Mich. 868, 413 N.W.2d 679 (1987); *Kowalesky v. Kowalesky,* 148 Mich.App. 151, 384 N.W.2d 112, *app. den.,* 425 Mich. 876 (1986); *Roth v. Roth,* 406 N.W.2d 77 (Minn. Ct.App.1987); *Hanson v. Hanson,* 738 S.W.2d 429 (Mo.1987); *Taylor v. Taylor,* 736 S.W.2d 388 (Mo.1987); *In re Marriage of Hull,* 219 Mont. 480, 712 P.2d 1317 (1986); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983); *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980), *overruled on other grounds* by *Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981); *Dorton v. Dorton,* 77 N.C.App. 667, 336 S.E.2d 415 (1985); *Jondahl v. Jondahl,* 344 N.W.2d 63 (N.D.1984); *Goger v. Goger,* 27 Or.App. 729, 557 P.2d 46 (1976); *Sorensen v. Sorensen,* 769 P.2d 820 (Utah 1989); *Gardner v. Gardner,* 748 P.2d 1076 (Utah 1988); *In re Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979).

**3.** *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982); *Pearce v. Pearce,* 482 So.2d 108 (La.1986); *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986); *Wood v. Wood,* 378 S.E.2d 59 (S.C.App.1989); *Smith v. Smith,* 709 S.W.2d 588 (Tenn.Ct.App.1985); *Austin v. Austin,* 619 S.W.2d 290 (Tex.Civ.App.1981); *Geesbreght v. Geesbreght,* 570 S.W.2d 427 (Tex.Civ.App.1978); *Nail v. Nail,* 486 S.W.2d 761 (Tex. 1972); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981).

**4.** *Richmond v. Richmond,* 779 P.2d 1211 (Alaska 1989); *Wilson v. Wilson,* 294 Ark. 194, 741 S.W.2d 640 (1987); *Antolik v. Harvey,* 7

to note that the classification of a jurisdiction as a community property state or an equitable distribution state is not determinative of its treatment of goodwill.

The view that the goodwill of a solo practice should be considered as marital property was early on set forth in the California decisions of *Mueller v. Mueller*, 144 Cal.App.2d 245, 301 P.2d 90 (1956) and *Golden v. Golden*, 270 Cal. App.2d 401, 75 Cal.Rptr. 735 (1969).

In *Mueller*, the husband was the sole owner of a dental laboratory which employed six people. The wife sought to have the value of the business divided at the time of the divorce. The husband argued that the goodwill of the business was wholly dependent upon his personal skill and ability. The court examined the business and concluded that the business was too old and too large to be dependent solely upon the owner for its goodwill, 144 Cal.App.2d at 251, 301 P.2d at 95, and held that the value of this business was to be divided between the parties. Furthermore, the *Mueller* court examined the argument that goodwill cannot arise in a professional business depending upon the personal skill and ability of a particular person. Even though unnecessary to its decision, the court stated that this argument was based on the definition of goodwill set forth by Lord Eldon, and the better, more modern, view is that the skill and learning acquired by a professional has intangible value which may be transferred. *Id.* at 251, 301 P.2d at 94–95. This left open the possibility that professional goodwill could also be divided upon divorce.

The court in *Golden* used the opening left by *Mueller* to hold that professional goodwill was marital property. The husband in *Golden* was a sole practicing physician. The wife sought a division of the value of the practice when the couple was divorced. The court, looking to *Mueller*, 270 Cal.App.2d at 405, 75 Cal.Rptr. at 737, set forth the holding that "the better rule is that, in a divorce case, the good will

Haw.App. 313, 761 P.2d 305 (1988); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986).

of the husband's professional practice as a sole practitioner should be taken into consideration in determining the award to the wife." *Id.*

The *Golden* court distinguished a divorce from the dissolution of a partnership, in which it might be difficult to determine the correct share upon distribution.

[I]n a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. *Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution* as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.

*Id.* at 405, 75 Cal.Rptr. at 738 (emphasis added).

Although the California court used community property law to give the wife credit for the increase in the goodwill value during the marriage, the non-monetary contribution aspect of equitable distribution principles tends to accomplish the same result. Note, *Treating Professional Goodwill as Marital Property in Equitable Distribution States,* 58 N.Y.U.L.Rev. 554, 558 (1983).

The New Jersey case of *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983) presents a situation which is quite similar to the instant case, but in that case the court held that the goodwill of a solo law practice was marital property. The husband was an attorney who operated his practice as a wholly-owned professional corporation. New Jersey and Maryland both place the following limitations on the practice of law: (1) sole practitioners cannot sell their law practices, *id.* at 436, 457 A.2d at 8, (2) restrictive covenants prohibiting competition by the transferor of the practice are not allowed, and (3) clients may not be sold between practices. Regarding domestic relations law, both Maryland and New Jersey are equitable distribution states, and neither

treats a professional degree or license to practice as property. *See Lynn v. Lynn,* 91 N.J. 510, 453 A.2d 539 (1982).

The New Jersey court began its analysis by looking at the various definitions of goodwill used in other states. Its conclusion was that goodwill exists and is a legally protected interest. 92 N.J. at 429, 457 A.2d at 4. Next the court examined the relationship between goodwill and "going concern value." Goodwill was found to be closely related to reputation, and the definition settled on by the New Jersey court was that goodwill "is equivalent to the excess of actual earnings over expected earnings based on a normal rate of return on investment." *Id.* at 431, 457 A.2d at 5.

Examining the relationship between goodwill and earning capacity (as that relates to a medical degree), the court found a difference between the two:

Future earning capacity *per se* is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting good will is property subject to equitable distribution. *Id.* at 433, 457 A.2d at 6.

Having distinguished goodwill from earning capacity and having found goodwill subject to equitable distribution, the court went on to state its rationale for the decision:

After divorce, the law practice will continue to benefit from that goodwill as it had during the marriage. Much of the economic value produced during an attorney's marriage will inhere to the goodwill of the law practice. *It would be inequitable to ignore the contribution of the non-attorney spouse to the development of that economic resource.* An individual practitioner's inability to sell a law practice does not eliminate existence of goodwill and its value as an asset to be considered in equitable distribution. Obviously, equitable distribution does not require conveyance or transfer of any particular asset. The other spouse, in this case the wife, is entitled

to have that asset considered as any other property acquired during the marriage partnership.

*Id.* at 434, 457 A.2d at 6 (emphasis added).

The view that professional goodwill is personal to the practitioner and is not marital property is articulated by the Texas court in *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972). Despite the fact that Texas, like California, is a community property state, the *Nail* court held that the goodwill built up by a medical practice was personal to the husband doctor. The court determined that the goodwill was based on the husband's personal skill, experience, and reputation. Because the goodwill was not an asset separate and apart from the doctor, it would be extinguished if he died, retired, or became disabled. Because of the personal nature of this asset, it was not considered by the court as an earned or vested property right at the time of the divorce, and did not qualify as property subject to division in a divorce proceeding. *Id.* at 764.

*Taylor v. Taylor,* 222 Neb. 721, 386 N.W.2d 851 (1986), sets forth the middle ground between the two extremes. The trial court found that the husband's professional medical corporation contained no goodwill which was subject to distribution upon divorce. On appeal, the Nebraska Supreme Court affirmed that finding. In so doing, however, the appellate court noted that in proper circumstances, professional goodwill might exist as a salable or marketable business asset. *Id.* at 732, 386 N.W.2d at 858–59. Whether such a situation existed would be a question of fact. If the goodwill was found to be saleable or marketable, the court could divide that goodwill as a marital asset. The court stated that the essential factor which would determine the goodwill to be personal would be its dependence upon the continued presence of the individual. *Id.* at 731, 386 N.W.2d at 858. *See also, Richmond v. Richmond,* 779 P.2d 1211 (Alaska 1989) and *Antolik v. Harvey,* 7 Haw.App. 313, 761 P.2d 305 (1988).

*Taylor,* therefore, provides for a case-by-case analysis to determine whether goodwill in a particular situation should

be considered marital property. Unlike the Texas court, *Taylor* does not rule out the possibility that a professional solo practice might contain such goodwill. And unlike the California cases, it allows for distinctions between those situations where goodwill is truly personal and where it is indeed marital property. It was this rationale which the Court of Special Appeals found persuasive. 75 Md.App. at 133, 540 A.2d at 843.

After reviewing these three alternatives and the rationale of their respective supporting cases, we are of the opinion that the goodwill of a solo law practice is personal to the individual practitioner. Goodwill in such circumstances is not severable from the reputation of the sole practitioner regardless of the contributions made to the practice by the spouse or employees. In order for goodwill to be marital property, it must be an asset having a separate value from the reputation of the practitioner.

We are not convinced that the goodwill of a solo law practice can be separated from the reputation of the attorney. It is the attorney whose name, whether on the door or stationery, is the embodiment of the practice. We are cognizant that in this computer age many law practices, and in Leo's practice in particular, much of the research and "form" work is done by nonlawyers. In the final analysis, however, it is the attorney alone who is responsible for the work that comes out of the office. Rule of Professional Conduct 5.3(c). In the instant case, the responsibility is solely Leo's, and no amount of work done by Margaret will shift the responsibility to her. The attorney's signature or affidavit places his seal of approval on the work being done and makes the attorney liable for its accuracy and authenticity. This professional assurance is what might have convinced some clients to use Leo F.X. Prahinski, Attorney-at-Law, instead of going to a title company to have their settlements completed. The assurance would end should Leo somehow remove himself from the practice. Therefore, the goodwill generated by the attorney is personal to him

and is not the kind of asset which can be divided as marital property.

Because the instant case involves the practice of law, special considerations arise which might not be present in other professional practices. In *Brown v. Benzinger*, 118 Md. 29, 84 A. 79 (1912), we quoted with approval from *Yeakley v. Gaston*, 50 Tex.Civ.App. 405, 111 S.W. 768 (1908) where the court said, "the sale of goodwill by a professional carries with it the obligation that he will abstain from practice in the future in the territory from which he binds himself to withdraw." It is clear that an attorney, as distinguished from other professionals, may not covenant to abstain from the practice of law, and therefore, may not sell his or her goodwill. The *ABA/BNA Lawyer's Manual on Professional Conduct* § 91:801 states:

> because of [the] ethical proscriptions, authorities have generally prohibited a lawyer's sale of his or her goodwill. [Citing], *Geffen v. Moss*, 53 Cal.App.3d 215, 125 Cal.Rptr. 687 (1975); *Detroit Bank and Trust Co. v. Coopes*, 93 Mich.App. 459, 287 N.W.2d 266 (1979); *Lake County Bar Association v. Patterson*, 64 Ohio St.2d 163, 413 N.E.2d 840 (1980); *In re Laubenheimer* [113 Wis.2d 680], 335 N.W.2d 881 [624] (Wis.1983); ABA Formal Opinion 266 (June 2, 1945); *see also* Sterett, *The Sale of a Law Practice*, 121 U.Pa.L.Rev. 306 (1972); Annot. 79 ALR 3d 1243 (1981).

Other professions do not have the prohibition against the sale of goodwill. *Brown v. Benzinger, supra* (sale of her practice "including goodwill" by a "surgeon chiropodist"); *Warfield v. Booth*, 33 Md. 63 (1870) (sale of a physician's practice including goodwill); *Spaulding v. Benenati*, 57 N.Y.2d 418, 456 N.Y.S.2d 733, 442 N.E.2d 1244 (1982) (goodwill of a dentist is a saleable asset); *Dwight v. Hamilton*, 113 Mass. 175 (1873) (goodwill of a physician is a saleable asset).

Since a lawyer's goodwill is not a saleable asset, it has no commercial value. The methods for valuing the marketable goodwill of a profession or business would not be applicable

to an attorney's nonmarketable goodwill. The fact that a lawyer's goodwill cannot be sold by the lawyer is another factor in our determination that it is not marital property.

Of equal importance is the fact that Maryland lawyers are governed by the Rules of Professional Conduct, which deal specifically with situations in which lawyers and non-lawyers work together.

Rule 5.4 provides in pertinent part:

(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

*　　*　　*　　*　　*　　*

(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for profit if:

> (1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;

> (2) a nonlawyer is a corporate director or officer thereof; or

> (3) a nonlawyer has the right to direct or control the professional judgment of the lawyer.

This rule clearly prohibits Leo from making Margaret a partner in his law practice. In fact, the practice was set up as "Leo F.X. Prahinski, Attorney–at–Law" and there is no indication that Rule 5.4(d) was not followed. Because Margaret cannot be a partner in the practice, she cannot claim a partner's interest in the practice upon her divorce from her lawyer husband.

Under these circumstances the non-lawyer spouse has no interest in the lawyer-spouse's practice and therefore the goodwill of the practice may not be included as marital property. We hold that a non-lawyer spouse cannot be a partner (silent or otherwise) in the practice of law in Maryland.

We have noted, as did the Court of Special Appeals, that the circuit court included the value of the goodwill of the

legal practice of Leo F.X. Prahinski as a part of the marital property. The alimony and the monetary award were both calculated with the value being a factor. This was error. Therefore, the entitlements of the spouse must be recalculated.[5]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY THE COSTS.

Dissenting Opinion by RODOWSKY, J., in which MURPHY, C.J. and ELDRIDGE, J. join.

RODOWSKY, Judge, dissenting.

I respectfully dissent. By mixing the Marital Property Act, Family Law Article §§ 8–201 through 8–205, with the Rules of Professional Conduct, principally Rule 5.6(a), without giving effect to the purpose of either ingredient, the Court has produced an inequitable result. Although the spouse of a person engaged as a sole proprietor in a trade or business may receive an equitable award in the value of the goodwill of that proprietorship, and although the spouse of a person engaged as a sole practitioner in a profession, other than law, may receive an equitable award in the value of the goodwill of that professional practice, the Court holds that the spouse of a person engaged as a sole practitioner in the legal profession cannot even be considered for an equitable award in the value of the goodwill of that law practice because, solely in the latter instance, goodwill is not marital property.

*Archer v. Archer,* 303 Md. 347, 493 A.2d 1074 (1985), held that there is no marital property in a license to practice medicine. But there this Court said:

"Our cases have generally construed the word 'property' broadly, defining it as a term of wide and comprehensive signification embracing ' "everything which has exchangeable value or goes to make up a man's wealth—ev-

---

5. We have not addressed the other issues certified for review and need not do so because of the disposition we make in this case.

ery interest or estate which the law regards of sufficient value for judicial recognition." ' *Deering v. Deering*, 292 Md. 115, 125, 437 A.2d 883 (1981); *Diffendall v. Diffendall*, 239 Md. 32, 36, 209 A.2d 914 (1965). In *Bouse v. Hutzler*, 180 Md. 682, 686, 26 A.2d 767 (1942), we said that the word 'property,' when used without express or implied qualifications, 'may reasonably be construed to involve obligations, rights and other intangibles as well as physical things.' 'Goodwill,' for example, has been characterized as a legally protected valuable property right. *Schill v. Remington Putnam Co.*, 179 Md. 83, 88–89, 17 A.2d 175 (1941)."

303 Md. at 356, 493 A.2d at 1079.

Indeed, the majority opinion acknowledges that "[t]he view most often followed treats goodwill as marital property in all cases." Opinion at 234 (footnote omitted). Thus, if a brain surgeon or a house painter were to divorce, most courts would permit the spouse to show both goodwill in the solo practice or sole proprietorship and the value thereof. This is consistent with the policy of Maryland's Marital Property Act

"that nonmonetary contributions within a marriage should be recognized in the event that a marriage is dissolved; that a spouse whose activities do not include the production of income may nevertheless have contributed toward the acquisition of property by either or both spouses during the marriage; that when a marriage is dissolved, the property interests of the spouses should be adjusted fairly and equitably, with careful consideration given to both monetary and nonmonetary contributions made by the respective spouses; and that the accomplishment of these objectives necessitates that there be a departure from the inequity inherent in Maryland's old 'title' system of dealing with the marital property of divorcing spouses."

*Archer v. Archer*, 303 Md. at 351–52, 493 A.2d at 1076–77.

The Court nevertheless holds that the majority rule in this country does not apply here because "the goodwill of a

solo law practice is personal to the individual practitioner. ... In order for goodwill to be marital property, it must be an asset having a separate value from the reputation of the practitioner." Opinion at 239. "Because the instant case involves the practice of law, special considerations arise which might not be present in other professional practices." Opinion at 240.

Although today's holding is clearly limited to solo legal practitioners, the holding seems to rest, at least in part, on equating goodwill with professional reputation and then denying marital property in a professional reputation. In my view that does not distinguish attorneys and brain surgeons from house painters for marital property purposes. Where services are involved a reputation for competently rendering the particular service is a component of goodwill whether we deal with a trade, a business or a profession. The nonmonetary support rendered by the spouse while the service provider was expending the time and effort required for quality performance, and thereby was building the reputation, is precisely the type of contribution within a marriage which the General Assembly intended be recognized under the Marital Property Act.

If, on the other hand, both the rationale and the holding of the majority opinion are limited to solo legal practitioners, then it seems to be principally because, under the majority's reasoning, "an attorney, as distinguished from other professionals, may not covenant to abstain from the practice of law, and therefore, may not sell his or her goodwill." Opinion at 240. Rule 5.6, entitled "Restrictions on Right to Practice," subsection (a), prohibits a lawyer from participating in offering or making "[a] partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement[.]" The rationale underlying the prohibition "is that such covenants impinge upon the right of future clients to free choice of counsel." G. Hazard, Jr. & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional*

*Conduct* 486 (1985). The freedom of choice of future clients is in no way diminished by recognizing a spouse's marital property interest in the goodwill of a solo law practice.

The only effect of the Rules of Professional Conduct on the problem before us is to complicate valuation. Because a solo law practice, unlike a medical practice or accounting practice, cannot be sold directly, valuation of a law practice might require comparisons to be drawn to other professions, particularly if a multiplier of some part of the net earnings of the law practice must be used. *See Dugan v. Dugan*, 92 N.J. 423, 439–40, 457 A.2d 1, 9–10 (1983) (multiplier to be applied to excess of average annual net income from practice over annual salary available in same general locale to attorney of comparable experience, expertise, education and age).

Finally, it is at least interesting to note that experienced counsel for the respondent did not even urge the majority holding. Recognizing the inequity of denying marital property in the goodwill of a professional practice while allowing marital property in the goodwill of sole proprietorships, trades and businesses, counsel urged that goodwill which ultimately rested on personal reputation not be included in marital property in the case of any trade, business or profession.

Chief Judge Murphy and Judge Eldridge authorize me to state that they join in the views expressed in this dissenting opinion.