*In re* MARRIAGE OF HELEN CARINI, Petitioner-Appellant and Cross-Appellee, and MICHAEL CARINI, Respondent-Appellee and Cross-Appellant.

First District (5th Division)   No. 82—1023

Opinion filed January 21, 1983.

Sidney H. Axelrod, of Axelrod & Hammer, of Chicago, for appellant.

Arthur M. Solomon and Lois Solomon, both of Solomon & Behrendt, of Chicago, for appellee.

JUSTICE MEJDA delivered the opinion of the court:

Petitioner Helen Carini appeals from those portions of a dissolution of marriage judgment relating to the award of nonmarital property, the division of marital property, and the reservation of maintenance. Respondent Michael Carini appeals from a separate order requiring him to pay petitioner's attorney fees and costs. We affirm.

The issues raised for review are: (1) whether the court erred in finding one parcel of real estate to be nonmarital property; (2) whether the court erred in failing to value two business interests; (3) whether the unequal division of marital property was an abuse of the court's discretion; (4) whether in light of the unequal division of property the trial court erred in reserving maintenance; (5) whether the distribution of property should be amended because of an error in calculation; and (6) whether the court erred in requiring respondent to pay petitioner's attorney fees.

The parties were married on February 14, 1955. One child was born of the marriage on July 21, 1960. Petitioner was employed outside the home for only a short period at the beginning of the marriage and since that time has remained at home. Her formal education ended after the sixth or seventh grade. Petitioner speaks and reads English but cannot write English; she speaks some Italian but cannot read or write it. Petitioner has had various health problems and testified that she is unable to stand or walk for more than an hour at a time.

Respondent worked as a carpenter during most of the marriage despite the fact that he lost four fingers of his right hand in an industrial accident at the age of 15 years. He testified that he is unable to work at the present time because of the hand injury. Respondent is a partner in two family-owned businesses: Carini Construction Company and Garcy Construction Company. He has been actively involved in these businesses for the last 20 years and, in the four years preceding trial, he devoted full time to partnership activities.

During the term of the marriage the parties acquired interests in various parcels of real estate, including a one-sixth interest in prop-

erty located in Laguna Beach, California. In 1976 respondent's mother executed a deed conveying an interest in the Laguna Beach property to respondent and his brothers. Respondent's mother testified that she lived on the property for 16 years, that she is the sole owner of said property, that she receives all of the income from the property, that although the deed recites consideration of $100,000 she received no payment for the property, and that the deed was prepared solely to avoid probate upon her death. Respondent and his brothers corroborated her testimony. Other property acquired by the parties include the marital home, held in joint tenancy, and fractional interests in various income-producing properties held as tenants in common with members of respondent's family and others.

The trial court found that the total value of the real estate which was marital property amounted to approximately $541,000 and that the annual cash flow from these properties is $17,500. On July 28, 1980, the court entered a judgment for dissolution of marriage awarding petitioner the marital home and three-fourths of respondent's interest in property located in Elmwood Park, Illinois. This award represented equity of approximately $208,000 with an annual cash flow of $9,200. Petitioner was also awarded the furniture and personal property contained in the marital home. The court found that the Laguna Beach property was nonmarital property and awarded the interest in that property to respondent. The court also awarded respondent the remaining real property having a total equity of approximately $333,000 and an annual cash flow of $8,300. The court reserved the questions of maintenance and attorney fees. On October 23, 1980, the court entered an order requiring respondent to pay petitioner's attorney fees.

Petitioner previously appealed from the judgment insofar as it apportioned the property and reserved the question of maintenance. Respondent cross-appealed from the order requiring him to pay petitioner's attorney fees (appeal No. 80—2333). We found nothing in the record to indicate "whether the apportionment is in lieu of or in addition to maintenance" as provided by section 503(c)(9) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*; par. 503(c)(9)). We therefore concluded that the property disposition portion of the judgment was not final and thus not subject to appeal, and further that the cross-appeal could not be considered until a final property disposition had been made. The appeal was dismissed on February 26, 1982 (*In re Marriage of Carini* (1982), 104 Ill. App. 3d 1199, 437 N.E.2d 942) by an order entered pursuant to Supreme Court Rule 23 (73 Ill. 2d R. 23).

Thereafter, the trial court in further proceedings entered a memorandum opinion wherein it set forth that the property division was in addition to maintenance; that petitioner's prospects for increased income are poor but that respondent, because of his demonstrated business ability, may enjoy substantial earnings and income in the future; and that in view of respondent's present income, an award of maintenance was reserved for future determination should the parties' circumstances change.

The parties now again appeal the court's original judgment and order and raise the identical issues and arguments contained in the first appeal.

OPINION

■ The first issue raised by petitioner is whether the court erred in its finding that the Laguna Beach property was nonmarital property. Section 503(a) of the Act provides that all property acquired by either spouse subsequent to the marriage is marital property unless it comes within one of the specific exceptions listed in that section. (Ill. Rev. Stat. 1981, ch. 40, par. 503(a).) One such exception is "property acquired by gift, bequest, devise or descent." (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)(1).) The record shows that the subject property was the marital home of respondent's parents and that respondent's mother receives all the income from the property. Although the deed conveying an interest in the property to respondent and his brothers shows consideration of $100,000, there was testimony that such consideration was never paid. It is our opinion, therefore, that the record supports the finding that respondent's interest in the property at Laguna Beach is within the foregoing exception and is nonmarital property.

■ Petitioner's second contention is that the trial court erred in failing to assign appropriate value to the two partnership business interests of respondent. The Act does not require the court to place a specific value on each item of property (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17), but only that there be competent evidence of the value and that the court's division of the property be supported by the evidence (*In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662). In the instant case the record shows that the two partnerships owned certain real estate which is accounted for in the schedule of properties in which respondent had an interest. There was evidence regarding the value, income and amount of indebtedness associated with each of these parcels. Petitioner introduced no evidence of other assets held by the partnerships or of income received by respondent beyond the amount shown

on his tax returns. Although there was no testimony regarding the specific value of the partnership business interests, there was competent evidence of the value of all of the property owned by the partnerships. We conclude, therefore, that the court's division of property was supported by the evidence.

The third issue raised by petitioner is whether the unequal division of property was contrary to the manifest weight of the evidence and an abuse of the court's discretion. There is no requirement that marital property be divided equally between the parties. (See Ill. Rev. Stat. 1981, ch. 40, par. 503.) An unequal division of property is not an abuse of the court's discretion. (*In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730; *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.) Section 503(c) of the Act provides that in a proceeding for dissolution of marriage the court shall divide the marital property in "just proportions" considering all relevant factors. That section sets out 10 factors to be included in the court's consideration. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) An examination of the record shows that each of the factors listed in section 503(c) was considered in arriving at the division of property. The court noted that the parties were married for 25 years, that respondent had been actively involved in the acquisition of the real estate interests which comprise most of the marital property, that the economic circumstances of the parties made cash flow an important factor in the division of property, and that it was desirable to award the family home to petitioner. See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

We disagree with petitioner's contention that the court disregarded the following factors: (1) the value of the property set apart to each spouse; (2) the age, health, and occupational situation of each of the parties; (3) whether the apportionment is in lieu of or in addition to maintenance; and (4) the reasonable opportunity of each spouse for future acquisition of capital assets and income (See Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(2), (7), (9) and (10).) The record shows that the court considered the nonmarital property of respondent but acknowledged that respondent does not presently benefit from the cash flow from that property. It was noted that petitioner is virtually unemployable due to her age, health and lack of employment skills, and further, that although respondent suffered a hand injury at an early age, he worked as a carpenter and in the real estate business for many years after the accident. In its memorandum opinion the court stated that its division of property was in addition to maintenance but reserved the award of maintenance at the time of the judgment. Fi-

nally, the court observed that petitioner has little opportunity to acquire further assets or increase her holdings but that respondent has a reasonable opportunity for such acquisition in the future.

If the trial court has considered all the factors set out in section 503 of the Act, it will only be reversed where it has abused its discretion. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) Such an abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court. 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.

■ In the instant case the court awarded respondent real estate interests valued at approximately $333,000 with an annual cash flow of $8,300. Petitioner was awarded real estate interests valued at approximately $208,000 with an annual cash flow of $9,200. The trial court was faced with the problem of trying to divide the property in "just proportions" and assure each of the parties a certain amount of cash flow. The court's division was made more complex by the fact that title to the parcels in issue was held in various forms by respondent and his brothers, except for title to the marital home which was held by the parties as joint tenants. The court noted the undesirability of a division of property having the effect of putting petitioner into a business partnership with respondent or his brothers. (See *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.) We conclude that, in view of all the circumstances, the trial court's decision was within the bounds of reason and supported by the evidence and was not, therefore, an abuse of discretion.

The fourth issue raised by petitioner is whether, in light of the unequal division of property, the court erred in reserving maintenance. The necessity for and the amount of the maintenance award are decisions within the sound discretion of the trial court. These decisions will not be set aside unless found to be contrary to the manifest weight of the evidence and, therefore, an abuse of discretion. (*In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 404 N.E.2d 1092.) Although the division of marital property is among the factors which must be considered in the award of maintenance (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488), it is not the only factor. Ill. Rev. Stat. 1981, ch. 40, par. 504.

The Act provides that the court may grant maintenance if it finds that the spouse seeking maintenance (1) lacks sufficient property to provide for his reasonable needs, and (2) is unable to support himself, or (3) is otherwise without sufficient income. (Ill. Rev. Stat. 1981, ch. 40, par. 504(a)(1), (2), (3).) The amount and period of the award are determined after consideration of all the relevant factors including

"the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***" (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1)), and "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance" (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(6)).

■ The Illinois Supreme Court recently held that there must be appropriate circumstances for entering a judgment of dissolution of marriage while reserving the question of maintenance. (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190.) One such circumstance is where a party is unable to pay maintenance if so ordered. (*Cohn.*) The record in the instant case shows that the parties were awarded substantial interests in various parcels of real estate which provide petitioner and respondent with annual cash flows of $9,200 and $8,300, respectively. The court gave due consideration to all the relevant factors regarding the situations of the parties, including present and future potential for employment and further income. The court found that although petitioner satisfied the requisite combination of standards, respondent was then unable to pay any amount to petitioner and continue to meet his own needs due to the limited flow of funds presently available to him. Accordingly, we conclude that the court did not err in its reservation of maintenance.

Finally, petitioner argues that the distribution of marital property should be amended to correct what she terms an "error in calculation" and conform with the intention of the trial court. The trial judge identified specific parcels of real estate to be awarded to petitioner and stated that their aggregate value was $247,000. The remaining property, which he stated was valued at $294,000, was awarded to respondent. Due to a mathematical error these amounts were misstated. When each party received the parcels identified by the court, the amount of cash flow stated by the court was correct but the value of property awarded to petitioner was only $208,000 while respondent received property valued at $333,000.

■ Although in certain situations the trial court has the power to amend a final order or judgment to correct a clerical error to reflect the judgment of the court (*Bradley v. Burrell* (1981), 97 Ill. App. 3d 979, 424 N.E.2d 15; *In re Marriage of Gingras* (1980), 86 Ill. App. 3d 14, 407 N.E.2d 788), the record shows that the division of property in the instant case was not the result of a clerical error. As previously noted, the marital property consisted of several parcels of real estate having different values and cash flows. The court was concerned with dividing the property in such a way that each party would, as nearly

as possible, share equally in the cash flow as this was the only income available to them. A division of property reflecting the values stated by the trial court would result in petitioner receiving a much greater portion of the cash flow. The record clearly shows that equalization of cash flow was a major consideration of the court. We conclude, therefore, that the division of property as stated in the judgment correctly reflects the intention of the trial court.

In his cross-appeal, respondent argues for reversal of the order requiring him to pay $6,855 in petitioner's attorney fees and costs. Section 508(a) of the Act directs the court to consider the financial resources of the parties before ordering payment of a spouse's attorney fees. (Ill. Rev. Stat. 1981, ch. 40, par. 508(a).) The criterion for assessing fees is the relative financial resources of the parties. (*In re Marriage of Stewart* (1979), 79 Ill. App. 3d 1125, 398 N.E.2d 1199.) To justify an award of fees, the party seeking relief must show financial inability to pay and the ability of the other spouse to do so. *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988; *In re Marriage of Fleming* (1980), 80 Ill. App. 3d 1006, 400 N.E.2d 625.

■ In the instant case petitioner was awarded the marital home and a fractional interest in one other piece of property. The award was valued at $208,000 and provides her an annual cash flow of $9,200. Petitioner established that she is unable to obtain employment. Respondent was awarded property valued at $333,000 which provides an annual cash flow of $8,300. Although respondent states that he is not employed, he has amassed the subject real estate and has a potential for future earnings. In assessing the relative financial resources of the parties, the trial court found that respondent has substantially greater resources and a greater potential and capacity for future earnings. We conclude that, on the record before us, the court did not err in requiring respondent to pay $6,855 in attorney fees incurred by petitioner.

Accordingly, for the reasons stated herein, we affirm the judgment and order of the trial court.

Judgment affirmed; order affirmed.

WILSON, P.J., and SULLIVAN, J., concur.