*In re* MARRIAGE OF VIRGINIA M. RANDALL, Petitioner-Appellee, and EUGENE F. RANDALL, Respondent-Appellant.

First District (1st Division)   No. 86—1280

Opinion filed June 29, 1987.

Law Office of Patrick S. Moore, Ltd., of Chicago (Patrick S. Moore, of counsel), for appellant.

Morgan, Lanoff, Denniston & Madigan, Ltd., of Chicago (John H. Jackson, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Respondent, Eugene Randall, appeals from the valuation and distribution of certain marital property, as well as an award of maintenance incident to the trial court's judgment dissolving his marriage with petitioner, Virginia Randall. For the following reasons, we affirm.

Eugene and Virginia were married on November 22, 1958, and had two children during their marriage, both of whom were emancipated at the time of dissolution. In July 1983, Virginia filed a petition to dissolve the marriage on the ground of mental and physical cruelty. At the time the proceedings were initiated, Virginia was 54 years old.

Trial of this case commenced in September 1985 on the issues of valuation and division of marital property. At the outset of the trial, the parties stipulated to the value of a number of assets, including the marital residence, several parcels of real property, Eugene's pension, two bank accounts and other items of personal property. As the following testimony reveals, however, disputes at trial arose primarily over the value of each spouse's business, a loan made by Eugene to Mark Rendelman, a cashier's check given to Eugene's mother, and Eugene's workmen's compensation award.

Virginia testified that she had operated a ceramics business for six years until June 1984, at which time she was injured and subsequently hospitalized following an accident which occurred when she

was thrown from her husband's truck. She stated that she was presently under a physician's care for the resulting injuries and walked with a cane. Additionally, she was being treated for diabetes at a cost of $46 a month. With respect to her ceramics business, Virginia approximated its worth at $3,200 after considering the value of each asset. Eugene testified that the business was worth more than $3,200, yet admitted he was "not really" in a position to value it.

Aside from her ceramics business, Virginia had also operated a roofing company with her husband known as G&V Roofing (G&V) which was incorporated with Virginia as president in 1978 or 1979. Virginia acted as administrator of the corporation until 1980, when it was dissolved due to her husband's failure to pay bills. Prior to its dissolution, Virginia cashed a $10,000 certificate of deposit owned jointly by her and her husband, $4,500 of which she used to pay a tax lien due on the corporation and the balance of which she used to pay household, medical, business, and living expenses. Virginia admitted that between 1979 and 1983 she obtained an additional $8,000 by cashing in two insurance policies and withdrawing various funds to cover the aforesaid expenses. At the time of trial, Virginia had incurred approximately $14,000 in medical and business expenses.

Virginia further testified that the $18,000 value her husband's attorney placed on the roofing business was understated, noting that the business, now a proprietorship, owns three vehicles, two kettles, hot luggers, a Smith Beam, and roofing insulation. Virginia disagreed with the Frey Company's appraisal valuing G&V's roofing equipment at $3,500. Virginia additionally claimed, notwithstanding Eugene's testimony to the contrary, that Eugene was currently working as a roofer as evidenced by photographs she had taken of his truck loaded with roofing materials, her observation that he returned home with dirty clothes on various occasions, and her discovery of roofing tar in the washing machine.

Virginia also asserted that out of a $72,656.89 deposit in Clyde Federal Savings and Loan Association made pursuant to a court order prior to trial, a $20,156.89 check was returned to Eugene, who in turn either invested the sum, "blew" it in Las Vegas, or gave it to his mother. Eugene subsequently testified that he gave the money to his mother.

Virginia stated that she had obtained property in Minnesota under a prior divorce settlement, the title of which was placed solely in her name. The property had been sold for $40,000, with $24,000 presently due. According to Virginia, the proceeds of that sale were used to pay the bills of her ceramics business. Eugene claimed that he paid off a

$6,000 debt on the property and, over a six-year period, performed $16,000 to $18,000 worth of improvements.

Eugene testified that he had been unable to work since November 14, 1983, due to injuries he sustained from an auto accident, but that he planned to return to work upon obtaining a release from his doctor. At the present time, Eugene subcontracts work to R&M Roofing, owned by his former son-in-law, in exchange for 7% to 8% of the company's net receipts. According to Eugene, in the past year he earned $2,000, while in 1981 when he worked full time, his gross income totalled $32,000. Eugene estimated the value of his roofing company at $18,000, and stated that he had recently sold one of the company trucks for $6,500.

Evidence was revealed at trial that Eugene was entitled to $12,717.23 pursuant to a decision rendered on October 23, 1982, in a workmen's compensation case Eugene had filed and that a man named Mark Rendelman owed Eugene $3,500. There was also testimony by Eugene that prior to and during the dissolution proceedings, he spent a $2,500 certificate of deposit and $2,500 in cash on living expenses. He further testified that his current personal and business debts totalled about $15,000.

Eugene also stated that he was entitled to the marital residence, as he had operated his business from that address since 1970 and used the garage to store his equipment. On further examination, however, Eugene indicated that he stored materials, tools and equipment in a rented garage in Cicero, Illinois, and on a lot in Berwyn, Illinois. He added that he had a post office box for receipt of business mail.

After hearing the above testimony, the trial court awarded Virginia, among other things, the marital residence, a $10,000 certificate of deposit, the Minnesota property, all assets of the ceramics business, and maintenance in an amount equal to 20% of Eugene's net income for a five-year period, terminable upon Virginia's full-time employment. Eugene was awarded, in addition to other items, the assets of G&V, the account due from Mark Rendelman, all proceeds from Eugene's workmen's compensation claim, and cash in the amount of $20,156.89 previously received by Eugene. It is from this judgment that Eugene appeals.

■■ ■ Eugene's initial argument on appeal is that the trial court's division of marital property was inequitable and therefore an abuse of discretion. In support of this argument, Eugene contends that the trial court was prejudiced against him throughout the trial in this matter as evidenced by the record, and that Virginia, unlike himself, received income-generating assets in the property distribution, such

as the two-flat marital residence, and property in Florida and Minnesota. We believe both contentions are without merit.

It is well established that a trial court's distribution of marital property rests within its sound discretion and will not be disturbed absent an abuse of that discretion. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.) Such an abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811.) Furthermore, there is no requirement that marital property be divided equally between the parties. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811; *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.) Rather, the court is directed to divide the property "in just proportions considering all relevant factors." Ill. Rev. Stat. 1985, ch. 40, par. 503(d).

■ The judgment of dissolution of marriage in this case indicates that from a pool of marital assets valued at $251,096.31, Virginia received $128,211.73 or 51% of the total assets, while Eugene received $122,884.58, or 49% of the assets. These figures reflect those values agreed upon by the parties as well as Eugene's valuation of the ceramic business, the roofing business, and disputed minor items such as a coin collection, a camper, and a Chrysler automobile. Even assuming that the account due from Mark Rendelman and the workmen's compensation award are uncollectible as Eugene contends, Eugene would still receive approximately 45% of the marital estate. Thus, under either valuation, there is no abuse of discretion, as a reasonable person could take the view adopted by the trial court.

Given the equitableness of the property distribution, we cannot conclude that the trial court was prejudiced against Eugene. Moreover, those portions of the record which Eugene claims demonstrate bias against him merely represent attempts by the trial court to either clarify testimony or further the progression of the trial. With respect to the type of assets awarded Virginia in the property distribution, Eugene overlooks the fact that the marital residence is encumbered by a $9,500 mortgage, the Florida property is subject to betterment fees and taxes of over $6,000, and the Minnesota property is not only nonmarital, but also generates a mere $334 per month in income.

■ Equally unavailing is Eugene's contention that the trial court erred in failing to make specific findings or to otherwise make clear from the record the relevant factors it considered in valuating certain assets of the parties. There is no requirement that the court place a specific value on each item of property in dividing it between married

parties, but only that there be competent evidence of value and that the court's division of property be supported by the evidence. *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811.

The record in the instant case shows that the court had before it sufficient evidence upon which to value the assets in dispute. With respect to the ceramics business, Virginia, based on her six years' experience in the field, was able to attest to the value of each asset, including the molds, kilns, and pouring tables, while Eugene admitted that he had no knowledge upon which to value the equipment. There was equally sufficient evidence that the roofing business was worth more than the $18,000 value placed on it by Eugene, as the business owned three trucks, one of which was sold for $6,500, and had equipment worth approximately $3,500. There was even evidence presented that Eugene was still operating the business. Furthermore, Eugene introduced no evidence that the $12,717.23 workmen's compensation award, the $20,156.89 cashier's check he gave to his mother, and the $3,500 due from Mark Rendelman were uncollectible.

■■ ■ Eugene also maintains that the court's distribution was an abuse of discretion because Virginia dissipated over $18,000 in marital assets. Dissipation may be found where a spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time when the marriage relationship is in serious jeopardy. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.) Here, however, this standard is not met, as the evidence shows that Virginia used $4,500 of the money to pay a tax lien filed against the roofing company and the remainder to pay for food for her husband and children as well as for clothing, business, household and medical expenses over a five-year period.

Eugene additionally argues that the trial court erroneously awarded Virginia a $10,000 certificate of deposit and the marital residence, both of which he claims he needs to operate his roofing business. Again, there is no abuse of discretion. Under the provisions of the dissolution judgment, Eugene received $8,966.90 from the Clyde Federal Savings and Loan account, $6,500 from the sale of his company's truck, $12,717.23 from his workmen's compensation action, and $1,625 in stock. These liquid assets totalling $29,809.13 sufficiently replace the $10,000 certificate of deposit as bond for the roofer's union.

Moreover, Eugene's claim that he needs the marital home for business purposes is not supported by the evidence. Eugene testified at trial that he received his business mail at a post office box, and that he stored his tools, equipment and materials in a rented garage

in Cicero and at a lot in Berwyn. In fact, the Berwyn lot, which had an agreed net value of $43,000, was awarded to Eugene by the trial court. Moreover, the work of a roofer is performed primarily at the jobsite and not at his home. Thus, the award of the marital home to Virginia, who was unemployed and under the care of a physician, was within the sound discretion of the trial court.

■ Eugene's final argument on appeal is that in light of his wife's ability to resume work, the marital and nonmarital property she received, and his inability to work, the court's award of maintenance to his wife was an abuse of discretion. We disagree.

Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act provides in part that maintenance may be awarded where the spouse lacks sufficient property to provide for her reasonable needs, is unable to support herself through appropriate employment, or is otherwise without sufficient income. (Ill. Rev. Stat. 1985, ch. 40, par. 504(a).) An award of maintenance is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless the court's decision amounts to an abuse of discretion or is against the manifest weight of the evidence. *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.

■ In the instant case, the trial court did not abuse its discretion in ordering Eugene to make monthly maintenance payments in an amount equal to 20% of his net income for five years, terminable upon Virginia's becoming employed full time. The record reveals that at the time of trial, Virginia was 56 years old, had been married to Eugene for nearly 25 years, she had not been employed for over a year, and had limited employment potential in that she walked with a cane and suffered from leg and hand injuries arising out of an accident involving her husband. In addition, Virginia was being treated for a long-standing diabetic condition at a cost of $46 per month. Her income from the nonmarital Minnesota property was a mere $334 per month, while her medical bills and business debts totalled about $14,000. Given that Eugene will be able to resume work after he obtains a doctor's release, and that he had earned a gross income of $94,254.89 in 1983, the last year he claimed he worked prior to these proceedings, we find no reason to disturb the maintenance award.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.