*In re* MARRIAGE OF MARY BROWN, Petitioner and Counterrespondent-Appellee, and FREDRIC BROWN, Respondent and Counterpetitioner-Appellant.

Third District   No. 3—92—0123

Opinion filed February 18, 1993.

Sacks, Albrecht, Copeland & Sacks, of Kankakee (Leonard F. Sacks, of counsel), for appellant.

Stephen Jaffe, of Chicago, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Mary and Fredric (Fred) Brown were divorced pursuant to a judgment of dissolution of marriage entered by the circuit court of Kankakee County on December 2, 1991. Fred presents three questions on appeal: (1) whether the court improperly included the goodwill of Fred's corporations as a divisible marital asset; (2) whether the court lacked competent evidence on the value of the corporations upon which it could base a just property settlement and maintenance award; and (3) whether the court abused its discretion by awarding Mary $1,500-per-month maintenance for five years in light of the property awarded her and Fred's ability to pay. We affirm the trial court on all three issues.

Mary filed a petition for legal separation in July 1990. Fred filed a response to the petition for legal separation and a counterpetition for dissolution of marriage in August 1990. Trial was held over two days in July 1991 and September 1991, with testimony given exclusively by Fred and Mary. There were no expert witnesses for either party.

The evidence introduced at the trial established that the parties were married in 1969, and had two children, Lisa and Lori, 20 and 18 years of age, respectively. The family home had been purchased in 1985 for $73,000. At the time of trial, $60,000 was owed on the mortgage. While the home had not been appraised, Fred believed that its value was $149,000.

Fred is the president and 50% shareholder of Brown-Miller Corp. (Brown-Miller), a closely held corporation whose principal business is the sale and distribution of plumbing products. Brown-Miller maintains a consignment inventory and operates under a series of 30-day contracts with a number of plumbing supply manufacturers that give Brown-Miller territorial rights for northern Illinois. Brown-Miller has been operating in this manner for over 10 years with a progressive increase in gross receipts and profits. According to Brown-Miller's corporate income tax returns, the gross profits for Brown-Miller were $512,458 for 1987, $610,270 for 1988, and $657,710 for 1989.

Fred is provided a company car and is salaried by Brown-Miller at $89,000 per year. His salary was voluntarily decreased in 1989 from $105,000. Fred and Jack Miller, the other shareholder and principal in Brown-Miller, decide the amount of salary.

In 1986, Brown-Miller sold a portion of its territorial rights with Chicago Faucet Company in eastern Iowa to the Zeil Company for $30,000.

Fred testified that he had no opinion as to the value of his shares in Brown-Miller.

In addition to Brown-Miller, Fred has 50% and 33% interests, respectively, in two other related businesses that are housed in the same rental facility as Brown-Miller, Benchmark Showcase Ltd. (Benchmark), and Balmoral Group Ltd. (Balmoral). Fred does not receive a salary from Balmoral, and, with the exception of a $5,000 bonus taken in 1988, has not received a salary from Benchmark. The three businesses are interrelated, have interlocking management, and combined generate approximately $1 million per year in gross receipts.

The court awarded Mary, in part, the family home subject to a $60,000 mortgage for which she was responsible, a 1987 Buick Riviera subject to a $7,200 loan for which she was to pay, and a $100,000 property distribution payable at $1,500 per month. Additionally, Mary was awarded $1,500 per month in rehabilitative maintenance for five years. Fred was awarded, in part, his shares in the stock of his three companies and his pension.

When reviewing a trial court's distribution of marital assets, this court will not disturb the trial court's judgment unless there has been a clear abuse of discretion. (*In re Marriage of Bush* (1991), 209 Ill. App. 3d 671, 677, 567 N.E.2d 1078.) An abuse of discretion occurs when, in view of all the circumstances, no reasonable person would take the view adopted by the trial court. *In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 227, 543 N.E.2d 119.

Fred's initial assertion of error is that the trial judge improperly valued Fred's goodwill by taking the goodwill into account twice. According to Fred, the court improperly valued Fred's goodwill in considering his future income potential, and also in valuing it as a marital asset that is subject to division.

Although it is improper for a trial court to duplicatively value the element of goodwill in determining a party's ability to generate future income, and again for valuing a party's interest in an ongoing business (*In re Marriage of Zells* (1991), 143 Ill. 2d 251, 256, 572 N.E.2d 994), Fred has failed to point to any ruling made by the trial court that would support his argument.

Fred's sole support for his argument is found in the trial court's October 3, 1991, memorandum, which states in part:

"There is obviously a good deal of good will in these companies, for as defendant pointed out, the stock would not be worth much without the presence of Miller and himself. *** The stock will be awarded to [Fredric]. It is the court's belief the stock is more valuable than the equity in the residence, and that imbalance should be made up in cash."

The court's discussion of goodwill recognized the success of Brown-Miller, and the undesirability of forcing a sale of stock, for, without a principal's active involvement in the corporation, the stock's value is substantially lessened. (*In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 445 N.E.2d 412.) We agree with the trial court that a sale of the stock would be "disastrous." Nothing in the record indicates that the court improperly considered goodwill a divisible marital asset.

Our supreme court has stated that any value of goodwill in a business is inherently reflected in the factors considered in reaching a just property distribution under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)). (*In re Marriage of Zells*, 143 Ill. 2d at 256, adopting the reasoning of this court in *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 507 N.E.2d 891.) Here, the trial court's October 3, 1991, memorandum indicates that it considered each of the elements of section 503(d) in arriving at its distribution of the marital assets.

We find that the trial court did not value Fred's goodwill in a duplicative manner and did not abuse its discretion in considering the goodwill of Fred's companies.

Fred next asserts that the trial court lacked competent evidence upon which it could base a just property settlement, specifically that the trial court erred by failing to assign a value to Fred's stock interests in the three companies. A trial court is not required to place a specific value on each item contained within the marital estate; however, it must have competent evidence of the value of the property to support a distribution. (*Courtright*, 155 Ill. App. 3d at 59.) It is the parties' obligation to present the court with sufficient evidence of value of the marital assets. *Courtright*, 155 Ill. App. 3d at 59.

The court had before it the income tax returns of the three companies for the years 1987-1989, as well as Fred's personal income tax returns for the years 1987-1989. Testimony was given regarding the value of the territorial sale by Brown-Miller to the Zeil Company

in 1986. The personal property of the three companies was insured for $100,000. Additionally, a "keyperson" insurance policy in the amount of $200,000 was taken out on Fred in which Brown-Miller was the named beneficiary.

Fred argues that the "keyperson" policy was not competent evidence upon which to value the corporation, since there was conflicting testimony as to how the policy proceeds were to be used. Fred believed that the proceeds should be used to buy the stock from the decedent's spouse, while his associate, Jack Miller, felt that the proceeds would be used to replace the decedent in the business.

It was certainly within the province of the trial court to weigh and consider the evidence and adopt Fred's own understanding of the intent in the purchase of the "keyperson" insurance by Brown-Miller. See *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792.

"Keyperson" insurance is essentially a way to fund a buy-sell agreement between principals in a closely held corporation, like Brown-Miller. Although the policy was issued in 1984 and has been without modification since that date, there was no evidence introduced that the value of Brown-Miller's stock has decreased. To the contrary, the evidence indicates that the value of the stock has increased due to a steady growth in the gross receipts and profits without a proportionate increase in debt. Therefore, the policy is probably an undervalued estimate of the stock's worth.

The goal of a trial court faced with valuing a corporation is to ascertain the market value of the stock. Market value has been defined as "the price which a willing purchaser will pay a willing seller in a voluntary transaction." (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 635, 397 N.E.2d 488.) Because stock of a closely held corporation is not actively sold on an open market, value is difficult to ascertain. It was proper, therefore, in the instant case, for the trial court to consider all of the circumstances of the corporation, including its finances and business, in determining a value for the distributable marital asset. See *Flynn v. Zimmerman* (1960), 23 Ill. App. 2d 467, 478, 163 N.E.2d 568, *appeal denied* (1960), 18 Ill. 2d 628; *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792.

Finally, Fred asserts that the court abused its discretion in awarding Mary $1,500 per month in maintenance in light of the property awarded to Mary and his ability to pay. The reasonableness of the maintenance award is within the sound discretion of the trial court. (*In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 445 N.E.2d 412.) The distribution of marital property is only one of the factors to be considered in an award of maintenance. The court may award

maintenance if it makes findings under section 504 that the spouse seeking maintenance:

"(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income." Ill. Rev. Stat. 1989, ch. 40, par. 504(a).

The Dissolution Act allows for rehabilitative, time-limited maintenance in order for the spouse to have the incentive to diligently pursue the training or education required to gain employment, and thus, self-sufficiency. (*In re Marriage of Kusper* (1990), 195 Ill. App. 3d 494, 500, 552 N.E.2d 1023.) This goal of self-sufficiency must, however, be balanced against the realistic likelihood that the spouse will be able to attain a level of support comparable to the standard of living enjoyed during the marriage, especially where the spouse has not been in the work force for a long period of time. *In re Marriage of Pearson* (1992), 236 Ill. App. 3d 337, 347, 603 N.E.2d 720.

When determining the amount and duration of maintenance to be awarded, the trial court must consider the enumerated factors of section 504(b):

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

■ Mary acted as homemaker for the family unit during the 22-year marriage. The Browns enjoyed an above-average lifestyle, including vacations and membership at a country club. Although Mary com-

plained of back problems, the court found her capable of employment. In recognition of Mary's high school education, the court encouraged Mary to pursue low-cost higher education available near her home.

In light of the trial court's findings that Fred's salary was voluntarily decreased in anticipation of the instant litigation, that Fred has continued to maintain his level of lifestyle, that Mary is ordered to maintain the family home for the children until their college education is completed, that Mary is responsible for the payment of the $60,000 mortgage and the $7,200 loan on the 1987 Buick Riviera, and that Mary is currently unemployed, this court holds that the trial court did not abuse its discretion in awarding Mary maintenance of $1,500 a month for five years.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BARRY and BRESLIN, JJ., concur.