*In re* MARRIAGE OF PAUL M. McHENRY, Petitioner and Counterrespondent-Appellant, and PATRICIA A. McHENRY, Respondent and Counterpetitioner-Appellee.

First District (3rd Division)    No. 1—95—4019

Opinion filed September 30, 1997.—Rehearing denied October 28, 1997.

Edward A. Berman, P.C., of Chicago (Edward A. Berman and Nina H. Rahmloff, of counsel), for appellant.

Linda S. Kagan, of Chicago (Mary C. Thompson, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Petitioner, Paul M. McHenry, appeals from a supplemental judgment for dissolution of marriage entered on June 29, 1995, involving the distribution of marital and nonmarital property. On appeal, petitioner seeks reversal and remand for a new trial, arguing that the trial court failed to create an equitable distribution by: (1) awarding respondent the more profitable of two businesses without regard to their respective values and based solely on each party's respective contributions to the businesses; (2) avoiding the issue of dissipation of marital property; (3) failing to take into account petitioner's economic circumstances, age, health, needs, future income prospects, and prior financial obligations; (4) failing to take into account the relative credibility of the parties in weighing their testimony; and (5) awarding attorney fees outside the parties' presence and without a hearing.

BACKGROUND

Petitioner, Paul M. McHenry, appeals from the supplemental judgment for dissolution of marriage entered on June 29, 1995, which divided the nonmarital and marital property of petitioner and respondent, Patricia A. McHenry. Petitioner and respondent were married in 1979, at which time petitioner owned a sole proprietorship accounting practice, and respondent was employed as the comptroller of a potato company. During the marriage, the parties acquired three businesses and three parcels of real property: Telecom Answering Service (Telecom); McHenry and McHenry, Ltd. (McHenry and McHenry), an accounting firm formed by both parties; Martin Welding Machine Rental and Repair (Martin Welding), a machine rental business located in Hammond, Indiana; the real estate occupied by Martin Welding; rental property in Homewood, Illinois, consisting of 13 residential and commercial units; and a marital residence in Olympia Fields, Illinois. In addition, the parties acquired a membership in the Olympia Fields Country Club. Also, upon separation in 1991, the parties sold their accounting business, McHenry and McHenry, to a third party under a five-year buyout agreement.

After extensive evidence was presented by both parties, the trial court distributed the assets in the following manner. Respondent was awarded Telecom, half of the net proceeds from the sale of the marital residence, half of the net proceeds from the sale of the Homewood real estate, half of the net rental income remaining from the Homewood property, and all accounts held solely in respondent's name. Petitioner was awarded Martin Welding, the real property upon which Martin Welding was located, any and all past and future proceeds from the sale of McHenry and McHenry, any and all interest in the Olympia Fields Country Club, half of the net proceeds from the sale of the marital residence, half of the net proceeds from the sale of the Homewood real estate, half of the net rental income remaining from the Homewood property, and all accounts held solely in petitioner's name.

On appeal, petitioner argues on several grounds that the above distribution was inequitable.

We affirm.

OPINION

I

Petitioner first contends that an inequitable distribution of marital assets resulted from the trial court's failure to make determinations as to the value of the two principal, ongoing business assets, Telecom and Martin Welding. At trial, both parties presented voluminous evidence regarding the value of the marital assets. The parties' expert witnesses, however, disagreed as to the value of Telecom and Martin Welding.

Petitioner's expert valued Telecom at $590,000, while respondent's expert concluded that it was worth $440,000. Petitioner argues that respondent's expert undervalued Telecom by including an unusually low revenue period in his evaluation. Contrarily, respondent argues that petitioner's expert exaggerated Telecom's value by factoring in an unusually low chief executive officer salary.

The experts also disagreed as to the value of the McHenrys' less successful business, Martin Welding. Petitioner's expert concluded that this business was worth $292,000, while respondent's expert valued it at $410,000. Once again, both experts disagreed on several factors, including the owner's compensation. In addition, petitioner's expert opined that the fair market value of the land upon which Martin Welding was located was $100,000. Respondent's expert valued the property closer to $175,000. Petitioner, however, argues that, due to a strong possibility that the property contains environ-

mental contamination, its value may be little or nothing. Respondent claims that petitioner's argument is wholly speculative and unsupported by any evidence of contamination.

At trial, the court made no determination as to the current market value of Telecom or Martin Welding and its property before making its distribution. The court did note, however, that in awarding Telecom to respondent and Martin Welding to petitioner, it considered "the relative contribution [sic] of the parties to the respective assets over the rather long life of [their] relationship." Petitioner claims that the absence of such valuations constitutes reversible error. We disagree.

■ This court has established in a long line of cases that section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 et seq. (West 1996)) does not require the court to place a specific value on each marital asset in considering the value of property to be set aside to each spouse. See In re Marriage of Brown, 241 Ill. App. 3d 305, 308, 608 N.E.2d 967 (1993); In re Marriage of Hagshenas, 234 Ill. App. 3d 178, 200, 600 N.E.2d 437 (1992); In re Marriage of Frederick, 218 Ill. App. 3d 533, 544, 578 N.E.2d 612 (1991); In re Marriage of Courtright, 155 Ill. App. 3d 55, 59, 507 N.E.2d 891 (1987); In re Marriage of Randall, 157 Ill. App. 3d 892, 896-97, 510 N.E.2d 1153 (1987); In re Marriage of Hyland, 95 Ill. App. 3d 31, 37, 419 N.E.2d 662 (1981). The Act only requires the court to consider the value of the property apportioned to each spouse and that there be sufficient evidence of value in the record to allow review of the trial court's distribution. See Brown, 241 Ill. App. 3d at 308; Hagshenas, 234 Ill. App. 3d at 200; Courtright, 155 Ill. App. 3d at 59; Randall, 157 Ill. App. 3d at 896; In re Marriage of Woolsey, 85 Ill. App. 3d 636, 637, 406 N.E.2d 1142 (1980).

Petitioner relies upon In re Marriage of Boone, 86 Ill. App. 3d 250, 252, 408 N.E.2d 96 (1980), for the proposition that trial courts must make valuations of the parties' primary marital assets, including businesses. In Boone, however, this court based its holding upon the fact that there was no proper evidence in the record of the value of the property in question. Boone, 86 Ill. App. 3d at 251. Likewise, in In re Marriage of Leon, 80 Ill. App. 3d 383, 385-86, 399 N.E.2d 1006 (1980), this court reversed a division of marital property based on the trial court's failure to find the value of the husband's insurance business, since there was insufficient evidence adduced at trial to support any distribution of that asset. See also In re Marriage of Olsher, 78 Ill. App. 3d 627, 397 N.E.2d 488 (1979) (finding that, in the absence of evidence of value, the trial court's division of property was an abuse of discretion).

■ In the cases upon which petitioner relies, the reviewing courts determined that the trial courts lacked proper or adequate evidence to make certain distributions. These cases are distinguishable from the case *sub judice*. Here, as petitioner admits, both parties presented vast amounts of evidence of value upon which the trial court could have based its disposition. This is not a case, therefore, in which there is a lack of competent evidence in the record to permit review by this court.

In cases involving the distribution of marital property, the appellate court will reverse only upon a finding that the lower court abused its discretion. *In re Marriage of Kerber*, 215 Ill. App. 3d 248, 254, 574 N.E.2d 830 (1991). In the case at bar, we do not find that the trial court abused its discretion, where it had ample evidence upon which it could have based its distribution, and no specific valuation of marital assets was mandated.

## II

■ Petitioner also argues that the court failed to take into account the parties' contributions to the marriage as a whole, as opposed to each asset. Although the parties presented conflicting testimony regarding their contributions to Telecom and Martin Welding, it appears that petitioner made much greater contributions to Martin Welding as compared to Telecom, and that respondent made considerably larger contributions to Telecom as compared to Martin Welding. The trial court considered these contributions in awarding Telecom to respondent and Martin Welding to petitioner. Petitioner, however, claims that the trial court erred in considering the parties' relative contributions to these assets and by ignoring the parties' respective contributions to the marriage generally. We disagree.

The Act requires the court to consider all relevant factors, including 12 enumerated factors, in making its property distributions, one of which is the contribution of each party to the value of the marital property. 750 ILCS 5/503(d)(1) (West 1996). Courts have interpreted the provision's use of "contribution" to include contributions to the marital relationship generally as well as specific contributions to certain marital assets. In *In re Marriage of Preston*, 81 Ill. App. 3d 672, 677, 402 N.E.2d 332 (1980), for example, the court considered one spouse's investment of separate funds in the marital home as contributions to the acquisition of marital property. Similarly, in *In re Marriage of Gustke*, 78 Ill. App. 3d 274, 276-77, 397 N.E. 146 (1979), the court awarded one spouse $18,000 before any division of the proceeds of the sale of the marital home based on that spouse's contributions to the purchase and improvements of the house.

In the instant case, there is no evidence in the record that the trial court did not take into account each party's contribution to the marital estate as a whole. Furthermore, it is proper for the trial court to consider specific contributions to certain assets in making its distribution. We find petitioner's argument to be disingenuous, for he argues in the previous section that the court should have made specific determinations with respect to one of the Act's enumerated factors (value of property), but that the court should not have made specific findings as to another of the Act's required factors (contribution to property).

## III

■ Petitioner further contends that the trial court failed to consider the issue of dissipation of assets. In the case at bar, both parties made substantial claims of dissipation. The issue was raised on several occasions at trial, and considerable evidence was introduced with respect to dissipation. The trial court ultimately ruled that no dissipation occurred.

Generally, the court must consider dissipation in accordance with section 503(d)(2) of the Act. 750 ILCS 5/503(d)(2) (West 1996). The courts have established a strict test for dissipation, however, stating that dissipation occurs when a spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time when the marriage has undergone an irreconcilable breakdown. *In re Marriage of Petrovich*, 154 Ill. App. 3d 881, 885, 507 N.E.2d 207 (1987). Whether certain conduct constitutes dissipation depends upon the facts of each case. *In re Marriage of Westcott*, 163 Ill. App. 3d 168, 174, 516 N.E.2d 566 (1987). However, the trial court's finding that no dissipation occurred will not be reversed absent an abuse of discretion. *Petrovich*, 154 Ill. App. 3d at 886.

Considering that the trial court's decision on this issue should be given great deference, and that it had more than sufficient evidence upon which to base its ruling, we find that the trial court did not abuse its discretion in finding that no dissipation occurred.

## IV

■ Next, petitioner claims that the court failed to consider petitioner's current and future economic circumstances, age, health, needs, and prior obligations as required by section 503(d) of the Act. Petitioner argues that his physical frailty, preclusion from practicing as an accountant within 50 miles of Chicago under the noncompetition provision of the McHenry and McHenry buyout agreement, and obligations of child support from a previous marriage were not considered by the trial court. Respondent argues that she also may

have a debilitating illness, that petitioner's health was not in jeopardy, that petitioner actually continued to work as an accountant and consultant, that their ages were only two years apart, and that petitioner overstated his prior obligations of child support, where one of two children was emancipated.

Petitioner cites no authority other than the Act itself to support his position that the trial court failed to consider the aforementioned factors. Assuming, *arguendo*, that petitioner's argument is supportable, we find no evidence in the record that the trial court failed to weigh the above factors in making its property distribution. Both sides presented vast evidence relating to these factors, and the trial court duly noted this before rendering its disposition. We, therefore, hold that no error occurred with respect to the court's consideration of the enumerated factors provided for in section 503(d) of the Act.

## V

■ Petitioner further contends that the trial court erred in its determination of respondent's credibility. Petitioner bases this argument on the grounds that respondent was impeached at trial to such a degree as to warrant a departure from the rule that great deference is given to the trial court in making determinations of credibility.

At trial, respondent testified inconsistently with respect to a $25,000 account she established as well as to a deposit of a $10,000 tax refund. Petitioner filed a petition for criminal contempt in light of respondent's testimony and the evidence. The trial court, however, dismissed the petition in its supplemental judgment for dissolution of marriage.

It is well established that determinations by the trier of fact as to the credibility of parties are given great deference. *In re Marriage of Blitstein*, 212 Ill. App. 3d 124, 132, 569 N.E.2d 1357 (1991). Our review of the record does not support a finding that the trial court erred in its assessment of respondent's credibility. The trial court considered petitioner's criminal contempt petition, respondent's response and memorandum thereto, and heard argument on the issue from both sides in chambers before making its ruling. The trial court, therefore, had sufficient evidence at its disposal and was in a better position to observe witnesses in making such determinations. See also *In re Marriage of Wright*, 212 Ill. App. 3d 392, 395, 571 N.E.2d 197 (1991) ("There is a strong and compelling presumption that the trial court, the entity closest to the litigation and in the best position to observe the witnesses, has made the proper *** decision").

## VI

■ Petitioner also argues that the court erred in awarding at-

torney fees in chambers, outside the parties' presence, and without a hearing. Petitioner bases this argument on section 508 of the Act, which provides that the trial court may award attorney fees after due notice and a hearing. 750 ILCS 5/508 (West 1996). At trial, petitioner's attorney stipulated that an evidentiary hearing on the attorney fees petitions was unnecessary and suggested that the court rule on the parties' petitions for attorney fees in chambers. Upon review of lengthy and detailed petitions and supporting affidavits filed by attorneys for both sides, the court ordered petitioner to pay his attorney $43,893 and ordered respondent to pay her attorney $33,981, as well as $7,500 to petitioner's attorney. Petitioner claims that it was error for the trial court to make rulings as to attorney fees without giving petitioner the benefit of a hearing.

This court has held that, in a divorce proceeding, a trial court is not required to conduct a special hearing on the question of attorney fees when no such hearing is requested. *Rattray v. Rattray*, 43 Ill. App. 3d 853, 856, 357 N.E.2d 701 (1976). Indeed, where a party to a dissolution proceeding does not request a hearing on its ability to pay attorney fees, that party has waived its right to a hearing on that issue, and the trial court may award attorney fees based upon pleadings, affidavits, and its own experience. *In re Marriage of Wolf*, 180 Ill. App. 3d 998, 1009, 536 N.E.2d 792 (1989).

Petitioner relies on *In re Marriage of Pagano*, 154 Ill. 2d 174, 184 (1992), for the proposition that the waiver of the right to such a hearing cannot be made unless the client acts deliberately and understands the rights he or she is waiving. Petitioner's reliance is misplaced, however, as the court in *Pagano* declined to hold that the fee hearing provision in section 508 can never be waived by a client, since the propriety of such a waiver depends upon the facts of each case. *Pagano*, 154 Ill. 2d at 184.

In the case at bar, it was petitioner's attorney who stipulated that a fee hearing was unnecessary, and this stipulation, like all others, was binding on petitioner, absent a showing that it was unreasonable, the result of fraud, or violative of public policy. *In re Marriage of Miller*, 112 Ill. App. 3d 203, 208, 445 N.E.2d 811 (1983), citing *Hudson v. Safeway Insurance Co.*, 106 Ill. App. 3d 391, 393-94, 435 N.E.2d 1255 (1982). Considering the aforementioned stipulation, the attorneys' readiness to have the trial court rule on the issue, and the fact that the court heard a great deal of evidence on the subject, we hold that no error occurred with respect to the award of attorney fees.

## VII

■ Lastly, we treat petitioner's general argument that, based on

the foregoing circumstances, the trial court failed to make an equitable distribution of the marital assets. Petitioner bases this argument primarily upon the fact that Telecom was awarded to respondent and Martin Welding to petitioner.

Illinois courts have established that an equitable division need not be an equal one. *In re Marriage of Schmidt*, 242 Ill. App. 3d 961, 966, 610 N.E.2d 673 (1993); *In re Marriage of Miller*, 112 Ill. App. 3d 203, 207, 445 N.E.2d 811 (1983); *In re Marriage of Woodward*, 83 Ill. App. 3d 253, 256, 404 N.E.2d 575 (1980); *In re Marriage of Dietz*, 76 Ill. App. 3d 1029, 1032, 395 N.E.2d 762 (1979). In addition, when awarding income-producing assets to one spouse, the court may achieve an equitable distribution by awarding offsetting payments to the other spouse or by awarding a greater share of the total marital assets to the spouse who does not receive the income-producing assets. *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215 (1995), citing *In re Marriage of Jarvis*, 245 Ill. App. 3d 1007, 1012, 614 N.E.2d 1294 (1993).

In the case *sub judice*, petitioner bases his argument partly upon the trial court's statement that it was contemplating a 50-50 division of the marital property. This remark was taken out of context, however, where the trial court further stated that the property division ultimately would not be equal.

As to the value of Telecom compared to that of Martin Welding and petitioner's claim of inequity based thereon, we note that it is fallacious for petitioner to compare the two businesses in isolation. One should view the two businesses in light of all the marital assets and all the relevant factors enumerated in section 503(d) of the Act. *In re Marriage of Schmidt*, 242 Ill. App. 3d 961, 966, 610 N.E.2d 673 (1993). A more proper comparison would be that of the dissimilar awards given to petitioner and respondent. All other marital assets having been divided equally, respondent received Telecom, while petitioner was awarded Martin Welding, the real property thereunder, all proceeds from the McHenry and McHenry sale, and the Olympia Fields Country Club membership. Our review of the record reveals that the parties' experts valued Telecom at $440,000 to $590,000. The mean value of Telecom from these estimates is $515,000. The experts gave the following range of values to the assets awarded to petitioner: Martin Welding at $292,000 to $410,000 (mean value equalling $351,000); the real estate at Martin Welding at $100,000 to $175,000 (mean value equalling $137,500); proceeds from McHenry and McHenry at $50,000 to $70,000 (mean value equalling $60,000); and the country club membership at $25,000.

When adding the respective mean values, it appears that respon-

dent received approximately $515,000 worth of additional marital property, while petitioner received additional property worth approximately $573,000. Even disregarding the country club membership and looking only at the parties' most conservative valuations, it appears that respondent received an added award worth $440,000, while petitioner was further awarded property worth $442,000. In our view, the evidence indicates that the trial court did, indeed, make an equitable distribution by awarding petitioner a larger share of the marital assets in order to offset its award of the more fruitful income-producing business to respondent.

This court will reverse only upon a finding of an abuse of discretion by the lower court. *In re Marriage of Kerber*, 215 Ill. App. 3d 248, 254, 574 N.E.2d 830 (1991). We hold that no such abuse occurred.

Accordingly, we affirm the decision of the trial court.

Affirmed.

CAHILL and LEAVITT, JJ., concur.